CHARLES STEITZ et al., Appellants, *v.* CITY OF BEACON, Respondent.

Argued May 24, 1945; decided December 7, 1945.

*Normington Schofield* for appellants. I. The complaint alleges injury due to affirmative negligent acts of the city. (*Bloom* v. *Jewish Board of Guardians,* 286 N. Y. 349; *Paige* v. *State of New York,* 269 N. Y. 352.) II. The complaint alleges injury due to the city neglecting wholly a duty specifically enjoined upon it. (*Springfield Fire Insurance Co.* v. *Village of Keeseville,* 148 N. Y. 46.) III. The municipality is divested of governmental immunity. (*Paige* v. *State of New York,* 269 N. Y. 352; *Matter of Evans* v. *Berry,* 262 N. Y. 61; *Bloom* v. *Jewish Board of Guardians,* 286 N. Y. 349; *Holmes* v. *County of Erie,* 266 App. Div. 220, 266 App. Div. 909, 291 N. Y. 798.)

*Vincent D. Stearns* for respondent. There is no allegation in the complaint which sets forth a tort by an officer or employee of the city of Beacon which was the proximate cause of, or a contributing factor to, the burning of appellants' property and the judgment of the Appellate Division should be affirmed.

THACHER, J. The complaint in this action was dismissed at Special Term for failure to state facts sufficient to constitute

a cause of action. The Appellate Division affirmed unanimously and we granted leave to appeal.

The action is brought to recover damages suffered as a result of a fire which occurred in the city of Beacon on December 26, 1942. Under section 24 of that city's charter (L. 1913, ch. 539, as amd. by L. 1920, ch. 171, § 6) the city " may construct and operate a system of waterworks ", and the same section provides that " it shall maintain fire, police, school and poor departments." Pursuant to these powers the city caused a system of water works and mains to be constructed to supply water for private and public use, including fire protection. As part of this system a pressure and flow regulating valve was constructed on a water line and water main located near the plaintiffs' property upon which there were certain buildings used in conducting the business of raising chickens.

It is alleged that the fire broke out on these premises and that plaintiffs' property was destroyed because of the carelessness and negligence of the city in failing to create and maintain a fire department, including fire equipment and protection for the benefit of plaintiffs' property and the properties of others located nearby. It is also alleged that the city negligently failed to keep in repair the pressure and flow regulating valve located near the plaintiffs' property and that it negligently operated a certain manually operated valve, and that by reason of such negligence an insufficient quantity of water was provided to combat effectively the fire in question. Plaintiffs' freedom from contributory negligence and damages in the sum of $27,900 are also alleged and the plaintiffs demand judgment for that amount.

The waiver of sovereign immunity by section 8 (formerly § 12-a) of the Court of Claims Act has rendered the defendant municipality liable, equally with individuals and private corporations, for the wrongs of its officers and employees. In each case, however, liability must be " determined in accordance with the same rules of law as applied to actions in the supreme court against individuals or corporations ". Accordingly the city is governed and controlled by the rules of legal liability applicable to an individual sued for fire damage under the circumstances alleged in the complaint. The question is whether the facts alleged would be sufficient to constitute a

cause of action against an individual under the same duties as those imposed upon the city solely because of failure to protect property from destruction by fire which was started by another. There is no such liability known to the law unless a duty to the plaintiff to quench the fire or indemnify the loss has been assumed by agreement or imposed by statute. There was no agreement in this case to put out the fire or make good the loss, and so liability is predicated solely upon the above-quoted provisions of the city's charter defining its powers of government. Quite obviously these provisions were not in terms designed to protect the personal interest of any individual and clearly were designed to secure the benefits of well ordered municipal government enjoyed by all as members of the community. There was indeed a public duty to maintain a fire department, but that was all, and there was no suggestion that for any omission in keeping hydrants, valves or pipes in repair the people of the city could recover fire damages to their property.

An intention to impose upon the city the crushing burden of such an obligation should not be imputed to the Legislature in the absence of language clearly designed to have that effect. Language similar to that found in the Charter of the City of Beacon may be found in many municipal charters. (For example, see New York City Charter [1938], § 481; Rochester City Charter [L. 1907, ch. 755], § 317, as amd. by L. 1921, ch. 292, § 3; Lackawanna City Charter [L. 1939, ch. 785], § 213; Hudson City Charter [L. 1921, ch. 669], § 262; Batavia City Charter [L. 1921, ch. 678], § 90; Second Class Cities Law, § 131. And see General Municipal Law, § 402.) Furthermore, many of these charters antedate the enactment of section 12-a (L. 1929, ch. 467), the predecessor of section 8, of the Court of Claims Act, as does the charter in this case. As was said in *Moch Co.* v. *Rensselaer Water Co.* (247 N. Y. 160, 166), " If the plaintiff is to prevail, one who negligently omits to supply sufficient pressure to extinguish a fire started by another, assumes an obligation to pay the ensuing damage, though the whole city is laid low. A promisor will not be deemed to have had in mind the assumption of a risk so overwhelming for any trivial reward." *A fortiori* the Legislature should not be deemed to have imposed such a risk when its language connotes nothing more than the

creation of departments of municipal government, the grant of essential powers of government and directions as to their exercise.

Such enactments do not import intention to protect the interests of any individual except as they secure to all members of the community the enjoyment of rights and privileges to which they are entitled only as members of the public. Neglect in the performance of such requirements creates no civil liability to individuals (Restatement of Torts, § 288; *Moch Co.* v. *Rensselaer Water Co., supra; Taylor* v. *Lake Shore & Mich. S. Ry.,* 45 Mich. 74; *Frontier Steam Laundry Co.* v. *Connolly,* 72 Neb. 767; cf. *City of Rochester* v. *Campbell et al.,* 123 N. Y. 405, and *Troeger* v. *Prudential Insurance Co. of America,* 154 Misc. 537, which cites Restatement of Torts, § 288). The rule is well stated in *Hayes* v. *Michigan Central R. R. Co.* (111 U. S. 228, 240).

Our decision in *Foley* v. *State of New York* (294 N. Y. 275) was not governed by this rule because the duty neglected in that case was imposed for the sole purpose of protecting the interests of the plaintiffs and others similarly situated against the particular hazard from which the plaintiffs suffered. In that case the Vehicle and Traffic Law imposed upon the State the duty to maintain traffic control lights upon State highways and a majority of the court held that we could not say as matter of law that the plaintiffs' injuries were not proximately caused by the negligence of agents of the State in failing to replace a burned out traffic light bulb. The sole purpose of requiring the State to maintain such lights was to protect individuals using the highways from collision damage. The violation of such a duty, resulting in damage, gives rise to an action in tort, if, but only if, the intent of the statutory enactment is to protect an individual against an invasion of a property or personal interest (*Amberg* v. *Kinley,* 214 N. Y. 531; *Schmidt* v. *Merchants Despatch Trans. Co.,* 270 N. Y. 287, 306; Restatement of Torts, § 286).

The case at bar is governed by our decision in the *Moch* case (*supra*). There the defendant water company was under a far more specific statutory duty than any to be found in the Charter of the City of Beacon. It was a public service corporation subject to the provisions of the Transportation Corporations Law (L. 1909, ch. 219, § 81), which imposed upon it the duty to furnish water at reasonable rates upon demand by the city through

hydrants or in public buildings "for the extinguishment of fires and for sanitary and other public purposes". In accordance with this statute the water company contracted with the city to deliver water at the fire hydrants. It was alleged that while the defendant was under this duty a building caught fire the flames from which spread to the plaintiff's warehouse, destroying this warehouse and its contents. The defendant, according to the complaint, was promptly notified of the fire but neglected after such notice to furnish sufficient water under adequate pressure to extinguish the fire before it reached plaintiff's warehouse, although equipped to do so and thus to prevent the spread of the fire and the destruction of plaintiff's property. Judgment was demanded for the resulting damage. The action for damages was claimed to be maintainable as an action for breach of contract within *Lawrence* v. *Fox* (20 N. Y. 268), as a cause of action for a common-law tort within *Mac-Pherson* v. *Buick Motor Co.* (217 N. Y. 382), and as a cause of action for the breach of a statutory duty predicated upon the provisions of the Transportation Corporations Law. It was held that the action could not be maintained for a tort at common law or for a breach of statutory duty because the duty was owing to the city and not to its inhabitants and because the failure to furnish an adequate supply of water was at most the denial of a benefit and was not the commission of a wrong.

The *Moch* case is controlling here because it has judicially determined that a corporation under a positive statutory duty to furnish water for the extinguishment of fires is not rendered liable for damages caused by a fire started by another because of a breach of this statutory duty.

Accordingly, the judgments of the courts below were correct both upon principle and authority and there is no statute justifying the imposition of liability upon the city in this case.

The judgment should be affirmed, with costs.

DESMOND, J.: (dissenting). The courts below dismissed this complaint on the ground that it fails to state facts sufficient to constitute a cause of action. According to the complaint, a fire broke out in plaintiff's building in the city of Beacon, New York, on the night of December 26, 1942. In the course of the fire the building burned down. It is alleged by plaintiff that the destruction of his property was due to the neglect of defend-

ant City of Beacon in that, according to the complaint, the city failed to keep in repair a pressure and flow regulating valve in the city's water lines and negligently allowed that valve to be and remain in a state of disrepair. It is further alleged that the city was at fault in its operation of another or hand valve in the water line, also.. By reason of such carelessness of the city, alleges plaintiff, there was no water, or at least not sufficient water, available for the effective fighting of the fire. Particularly to be noted is the allegation in the complaint that the city, under its charter (see L. 1920, ch. 171, § 24) was required by law to create and maintain a fire department. That same charter authorizes the city to construct and maintain a water system. Special Term, in ordering the complaint dismissed, relied on *Hughes* v. *State of New York* (252 App. Div. 263). In the *Hughes* case the court, among other things, held that, since the extinguishment of fires is a " governmental " function of a city, no liability can be predicated on such a corporation's failure to furnish adequate fire protection. There are innumerable cases throughout the United States, some of them in this State, so holding, but they all rest in whole or in part on the theory that, in furnishing protection against fire and in extinguishing fires, a city acts in its " governmental " and not in its " proprietary " capacity. That traditional theory of immunity from liability for faulty performance of "governmental " activities, including fire protection is, however, only an aspect of the larger rule of the common law that a sovereign could not be held to respond in damages (see *Workman* v. *New York City, Mayor &c.,* 179 U. S. 552, 556, 566; *Dunstan* v. *City of New York,* 91 App. Div. 355, 359). " All these cases but expound the theory of sovereign attribute " (*Workman* v. *New York City, Mayor &c., supra,* at p 572). The State of New York, however, has, by section 8 of the Court of Claims Act, waived that immunity from liability and action and has assumed such liability, and consented to have the same determined, " in accordance with the same rules of law as applied to actions in the supreme court against individuals or corporations ". Pointing out that no city of this State " has any independent sovereignty " and that the immunity formerly enjoyed by cities " was nothing more than an extension of the exemption from liability which the State possessed ", we have held that the City of New York would be liable for negligence

in connection with the conduct of its Police Department, even without General Municipal Law, section 50-b (*Bernardine* v. *City of New York,* 294 N. Y. 361, 365). The common-law theory of nonliability of municipal corporations in connection with their police departments was precisely the same as with respect to their fire departments. We conclude that the cities of this State have, as a result of the State's waiver of its immunity, become liable at least for negligent maintenance of such facilities and appliances for fire protection as they possess. We limit ourselves herein to saying that an actionable wrong is stated in this complaint insofar as it alleges that the city, having installed certain hydrants, valves, etc., negligently allowed them to fall into disrepair and disuse. We need not now decide what, if any, liability there would be in a case where the alleged fault of the city was not the negligent upkeep of its fire-fighting plant, but a failure to provide adequate fire-fighting facilities or to use them efficiently (see *Mills et al.* v. *City of Brooklyn,* 32 N. Y. 489, 495; *Urquhart* v. *City of Ogdensburg,* 91 N. Y. 67, 71). Our upholding this complaint would go only so far as to say that the statements therein that the city failed to keep its fire equipment in good order, with resulting damage to the property of the citizen, allege an actionable wrong. Such damage need not be by physical impingement, but may be such as results from a failure to keep protective devices working (*Foley* v. *State of New York,* 294 N. Y. 275).

This complaint discloses another ground on which liability might be predicated. As above pointed out, an applicable State statute commands defendant City of Beacon to maintain a fire department. Even before the State of New York relinquished its sovereign immunity, the cities of this State were held liable for their defaults in connection with such State-mandated services. That obligation follows from the contract with the State, implied from the acceptance of the city's charter, that the city will discharge the duties imposed by the charter (see *Storrs* v. *The City of Utica,* 17 N. Y. 104, 109; *Hover* v. *Barkhoof,* 44 N. Y. 113, 121; *Maxmilian* v. *Mayor,* 62 N. Y. 160, 164; *Missano* v. *The Mayor,* 160 N. Y. 123, 129; *O'Donnell* v. *City of Syracuse,* 184 N. Y. 1, 10; *Herman* v. *Board of Education,* 234 N. Y. 196, 201; *Urquhart* v. *City of Ogdensburg, supra*). That idea of an implied contract is well stated at 43 Corpus Juris, Municipal Corporations, § 1703, page 927, as follows: " In many jurisdic-

tions the rule is laid down that a municipal corporation, when charged in its corporate character with the performance of a municipal function, the duty being absolute or imperative and not merely such as under a grant of authority is intrusted to the judgment and discretion of the municipal authorities, is civilly liable for injuries resulting from misfeasance or nonfeasance with respect to such duty; and this rule has been especially applied in cases relating to streets, and to sewers and drains.'' As the above quotation from Corpus Juris points out, most of the cases enforcing this rule involve streets and sewers and follow *Conrad* v. *The Trustees of the Village of Utica*, 16 N. Y. 158 (and *Weet* v. *Village of Brockport* which in effect is incorporated into this court's opinion in the *Conrad* case — see reporter's note at p. 161 of 16 N. Y.). While we find no reported cases containing like holdings as to a city's negligence in connection with maintaining its fire-extinguishing paraphernalia, we see no reason against such a holding. It follows that this complaint should not have been dismissed for insufficiency.

It is not presently important that the failure was of a valve or hydrant in a water line, rather than of the fire-fighting machinery itself. The charter's mandate to the city to have and operate a fire department necessarily includes the furnishing of water therefor.

Although liability for failure to supply fire protection was denied in both *Fire Insurance Co.* v. *Village of Keeseville* (148 N. Y. 46) and *Moch Co.* v. *Rensselaer Water Co.* (247 N. Y. 160), neither case is a compelling authority for affirmance here. Both those cases were, of course, decided before the State gave up its sovereign immunity. Furthermore, the *Keeseville* and *Moch* opinions carefully pointed out that neither the Village of Keeseville nor the City of Rensselaer, was under any such legal duty as has been imposed on this defendant by its legislative charter to supply its inhabitants with protection against fire.

The judgment should be reversed and a new trial ordered, with costs to abide the event.

LEWIS, CONWAY and DYE, JJ., concur with THACHER, J.; DESMOND, J., dissents in opinion in which LOUGHRAN, Ch. J., concurs; LEHMAN, Ch. J., deceased.

Judgment affirmed.