Chief Judge Conway (dissenting).
This action was instituted by plaintiff, as administrator of the estate of his son, Arnold L. Schuster, to recover damages against the City of New York for the son’s alleged wrongful death and conscious pain and suffering. Young Schuster was shot and killed following the arrest of a notorious criminal, Willie Sutton. It was through Schuster’s recognition of Sutton that the police became aware of the latter’s whereabouts and were able to apprehend him. The killing took place on March 8, 1952 while Schuster was walking in the vicinity of 45th Street and 9th Avenue, Brooklyn. The assassin is still at large and his identity remains unknown.
Four causes of action are set forth in the complaint. The first cause of action—for wrongful death—is predicated on averments that the intestate was killed because the police of the City of New York, with knowledge that Sutton was an unusually dangerous character who associated with an unusually dangerous group of persons, and with knowledge that threats had been made against the intestate’s person and life following the arrest of Sutton, failed, neglected and even refused on demand to furnish him the protection called for by the situation. The second cause of action is derived from the same factual presentation as the first, but seeks a recovery of damages for pain and suffering sustained by plaintiff’s intestate in the interval between the time he was shot and the time he died. The third cause of action—for wrongful death—is based upon allegations that the police falsely represented to the intestate that he was not in danger because of the threats, as a consequence of which he was induced to go on to a public highway where he was shot. "The fourth cause of action derives from the same factual recitation as the third, but seeks a recovery of *90 damages for pain and suffering sustained by plaintiff’s intestate prior to Ms death.
The sole issue to be determined by this court is whether the complaint was properly dismissed on motion made under rule 106 of the Rules of Civil Practice for failure to state facts sufficient to constitute a cause of action.
' It is well settled that the State’s waiver of sovereign immunity by section 8 of the Court of Claims Act has rendered the defendant municipality answerable, equally with individuals and private corporations, for the wrongs of its officers and employees (Steitz v. City of Beacon, 295 N. Y. 51, 54). The waiver of immunity has, however, been accompanied by a provision that liability be “ determined in accordance with the same rules of law as [are] applied to actions in the supreme court against individuals or corporations * * (Court of Claims Act, § 8.) Accordingly, for plaintiff to recover against the city it must be established that there was a duty running from the city to plaintiff’s intestate and that such duty was violated.
Section 435 of the New York City Charter enumerates the duties of the Police Department and force in these words: “ The police department and force shall have the power and it shall be their duty to preserve the public peace, prevent crime, detect and arrest offenders, suppress riots, mobs and insurrections, disperse unlawful or dangerous assemblages and assemblages which obstruct the free passage of public streets, sidewalks, parks and places; protect the rights of persons and property, guard the public health, preserve order at elections and all public meetings and assemblages; subject to the provisions of law and the rules and regulations of the commissioner of traffic, regulate, direct, control and restrict the movement of vehicular and pedestrian traffic for the facilitation of traffic and the convenience of the public as well as the proper protection of human life and health; remove all nuisances in the public streets, parks and places; arrest all street mendicants and beggars; provide proper police attendance at fires; inspect and observe all places of public amusement, all places of business having excise or other licenses to carry on any business; enforce and prevent the violation of all laws and ordinances in force in the city; and for these purposes to arrest all persons guilty of *91 violating any law or ordinance for the suppression or punishment of crimes and offenses.”
Clearly, the foregoing statute places the police force of the City of New York under a broad duty to protect the general public from crime, including homicide. However, for plaintiff to succeed in this suit more must be shown. That is, it must be demonstrated that the duty imposed upon the police force to protect the general public inures to a member of the public individually, for the city cannot be held liable to plaintiff unless the police force owed his intestate a duty of protection against homicide. It will be remembered that this court has held that a statutory duty owing to the public as a whole does not run to the individual members thereof “ in the absence of language clearly designed to have that effect ”. (Steitz v. City of Beacon, 295 N. Y. 51, 54, 55, supra.) In the present case we cannot find any language clearly designed to impose upon the city the crushing burden of an obligation such as that which plaintiff claims exists in favor of his intestate. Special Term has aptly noted: “ The right of the public generally to he safeguarded against burglaries does not give a cause of action to the individual whose home has been burglarized.” Similarly, the right of the public generally to be safeguarded against murder does not give a cause of action to the next of kin of one who has been murdered. The language of the Charter provision here, like the language of the Charter provision in the Steits case (supra, pp. 55-56), “ connotes nothing more than the creation of departments of municipal government, the grant of essential powers of government and directions as to their exercise.”
“ Such enactments do not import intention to protect the interests of any individual except as they secure to all members of the community the enjoyment of rights and privileges to which they are entitled only as members of the public. Neglect in the performance of such requirements creates no civil liability to individuals (Restatement of Torts, § 288; Moch Co. v. Rensselaer Water Co., supra; Taylor v. Lake Shore & Mich. S. Ry., 45 Mich. 74; Frontier Steam Laundry Co. v. Connolly, 72 Neb. 767; cf. City of Rochester v. Campbell et al., 123 N. Y. 405, and Troeger v. Prudential Insurance Co. of America, 154 Misc. 537, which cites Restatement of Torts, § 288).” (Steitz v. City of Beacon, 295 N. Y. 51, 55-56, supra.)
*92 The majority opinion is premised on the idea that “the public (acting in this instance through the City of New York) owes a special duty to use reasonable care for the protection of persons who have collaborated with it in the arrest or prosecution of criminals once it reasonably appears that they are in danger due to their collaboration.” Apparently the majority proposes to leave it to a jury to determine (1) when it reasonably appears that the “collaborator” is in danger and (2) whether the public has exercised reasonable care for the protection of such person. We cannot agree that the public is under any such special duty.
Certainly, no statute imposes such a special duty on the public and we are unable to find any warrant in common law for the imposition of such a special duty. The majority holds that such duty is owed to the individual since there is imposed upon the individual a duty to aid in the enforcement of the law. We disagree with this sweeping premise and, so, reject the proposition as unsound. Our State does not put its residents under any duty to take steps either to prevent the commission of crime or to bring the offender to justice, after its commission. The common-law crime of misprision of felony, which made it criminal conduct not to prevent a felony from being committed or not to bring the felon to justice, has not been carried into our Penal Law. Reward offers, for the capture of a convicted criminal or an accused, are not made payable to those (such as police officers) legally obligated to perform the act called for in the offer. However, they are payable to private citizens for the very reason that such persons are not legally bound to aid in the apprehension of wanted men. As Corpus Juris Secundum states (77 C. J. S., Rewards, § 34): “ The general rule is that when a reward is offered to the public, as most rewards are, it may be accepted by anyone who, under its terms and conditions, performs the services required, as, for example * * * the apprehension of an offender * * *. [A]s an exception to the general rule, persons whose duty it already is to do that for the doing of which the reward is offered are not entitled to claim the reward.” The offer of a reward, rather than the imposition of a legal duty, has been the modern means employed to induce private citizens to aid the police in the enforcement of the law. The thought behind rewards is that the offer of *93 a monetary consideration will activate citizens possessed of the desired information, but fearful of disclosing it, into assuming such risks as may flow from their co-operation with the authorities. Thus, the reward is the quid pro quo not only for the information disclosed but for the assumption of the risks of disclosure as well. The public is not put under an additional special duty of protecting the recipient of the reward.
We recognize, of course, that countless numbers of persons willingly identify those accused of crime, without thought of monetary reward. Such persons are undoubtedly aware of the fact that they, themselves, are the beneficiaries of their own acts, for every resident of a community is benefited by the apprehension, conviction and incarceration of lawless persons at large in the community. One thing is certain—whether the citizen or resident who co-operates with the police in identifying a criminal does so out of a selfish motive or out of an altruistic motive, in so doing he is not discharging a duty imposed upon him by law. Thus falls the premise of the majority to the effect that the duty of everyone to aid. in the enforcement of the law begets an answering duty on the part of government reasonably to protect those who come to its assistance. It is true that under certain circumstances a person is placed under a legal duty to aid the law enforcement authorities, i.e., where commanded by an officer to aid him in arresting any person, or in retaking any person who has escaped from legal custody, or in executing any legal process (Penal Law, § 1848). Having imposed such a duty on individuals, the Legislature has imposed upon the State a reciprocal duty to pay damages to any individual injured as a consequence of obeying the command, or, if death results, to pay damages to the personal representative of the deceased. Section 1848 of the Penal Law is not applicable here for the reasons that (1) the intestate’s acts in connection with the arrest of Sutton were not performed pursuant to the command of an officer but were voluntary in nature and (2) the intestate’s death did not arise out of and within the course of the arrest within the meaning of section 1848 of the Penal Law—his death occurred several weeks after the arrest had been made.
As we have said, the risk attendant upon co-operation with the law enforcement officials is assumed daily in our criminal *94 courts by countless numbers of persons. Concededly, some of these persons do so in obedience to a subpoena and, so, are acting in pursuance of a legal duty. However that may be, and even assuming that the citizenry is under a duty to aid law enforcement officials, to hold that the countless numbers of persons who co-operate with law enforcement officers are entitled to special police protection would be to impose upon the municipality an unreasonable burden—a burden which would incapacitate the entire existing police force and leave the general public without police protection.
Duties have their genesis in concepts of reasonableness. It would be unreasonable, if not impossible, for a community to support a police force of the dimensions required to discharge such a duty. At least three policemen working around the clock would be required for each witness in each such case. Reasonableness demands that the need for special police protection be left to the absolute discretion of the Police Department. It is a well-known fact that few witnesses or informers are murdered or assaulted by reason of their having assisted in the enforcement of the law. This is some evidence of the fact that, by and large, the Police Department exercises sound discretion in these matters. Now, it may be argued that since there are few deaths or assaults the city can well afford to pay damages to the one assaulted or to the estate of the one killed. That, however, is not the question. The question is whether the duty of furnishing special police protection is to be imposed upon the public. If such duty exists special protection can properly be demanded by every witness who identifies a criminal, for there is a likelihood that every criminal will have associates of a violent bent. If such special duty exists the police cannot refuse to give it. Such a situation should not be brought into existence. The need for special protection must be left to the absolute discretion of the police force. A mere mistake in judgment by the department should not be the basis for the imposition of liability upon the municipality else, as we have noted, to discharge its duty and at the same time to avoid liability, the police department will find itself faced with the impossible task of supplying all witnesses and all informers with special protection until that point of time is reached when it becomes a virtual certainty that no harm will befall the *95 particular witness or informer. To withdraw the protection at any point short of this will, under the rule now being announced by the majority, subject the municipality to possible liability at the hands of a jury. The truth of this becomes evident when it is realized that in the present case the majority is content to let a jury determine whether to return a judgment against the city even though (a) there is no proof available as to who shot and killed Schuster and (b) there is no proof available as to whether the threats made to Schuster were made by his assassin or simply by a crank.
It is further suggested that the city may properly be held liable for having prematurely withdrawn partial protection of Schuster. Support for this holding is said to be found in the rule that “ one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all * * * (Glanzer v. Shepard, 233 N. Y. 236, 239).” We believe that the quoted rule cannot reasonably be said to have application to a situation such as that presented here. Under that rule one who assumes to act, where he is not legally bound to act, is required to act with such care that he not injure, or aggravate an existing injury, assuming that there be one, of the one to whom he offers aid. Assistance given which in no way harms the recipient thereof is not actionable. In affording Schuster partial special protection the police did not bring about his death. Likewise in withdrawing the partial special protection the police did not bring about Schuster’s death. In withdrawing the special protection gratuitously given, the police left Schuster in precisely the same position as he was in before the partial special protection was given. The withdrawal did not aggravate or alter the situation in the slightest. Schuster’s death was caused solely by the act of an unknown assailant. The public at no time owed him special protection against such assailant. They gratuitously gave him partial special protection but it cannot fairly be said that such partial special protection, or the withdrawal thereof, increased the danger of injury to Schuster or in any way contributed to his death.
Nor may the city be cast in damages upon the ground that statements and assurances given by certain members of the police force lulled plaintiff’s intestate into a relaxation of vigi *96 lance and a false sense of security. Briefly, the allegations are that the police falsely represented that the intestate was not endangered by reason of “ threatening and menacing telephone calls, anonymous letters, missives, notes and messages ” and that the police falsely represented that the telephone calls, etc., were the work of “ crackpots ” and “ cranks ” and were “ child’s stuff”. It is clear that the statements made by the police were expressions of opinion, not expressions of fact upon which the intestate had a right to rely. They could hardly have been more than expressions of opinion in view of the fact that the identity of those who threatened the intestate was unknown. No fraud action may be grounded on a mere expression of opinion.
In sum, the police force of the City of New York is under a broad duty to protect the general public from every form of crime. However, this duty does not inure to the benefit of individual members of the public.
The judgment should be affirmed, with costs.