Froessel, J. (dissenting).
I concur with Chief Judge Conwat and Judge Desmond for affirmance. Without the support of a statute or a single applicable judicial precedent, the majority is about to announce a new rule of law, namely, that every city, town and village of this State may now be held in heavy damages if their police departments fail to give such protection to an informer as a jury may later determine was adequate. And this, notwithstanding the fact that the Legislature of this State, which created these governmental agencies, has already *97 manifested, by its enactment of section 1848 of the Penal Law, how far it has been willing to go in allowing compensation to persons aiding the police.
In the first place, we are here dealing with the legal sufficiency of a complaint, in which plaintiff seeks upwards of half a million dollars in damages from the City of New York. That complaint alleges, among other things, that the Police Department of the City of New York “ duly acknowledged and was instrumental im making known ’ ’ to the press and the general public “its acknowledgment and recognition” of Schuster’s part in supplying information leading to Sutton’s arrest. (Emphasis supplied.) Such “acknowledgment” presupposes that the press and public were already aware of Schuster’s role, and it is not alleged that the Police Department ‘ ‘ widely publicized” the fact, as the dissenting Justice below wrote, and violated “ its usual practice of concealing the identity of informers ”, as now claimed by appellant.
The complaint further sets forth that the Police Department knew that Sutton ‘ ‘ was an unusually dangerous character with an unusually dangerous group of associates ”, which associates had “ a special reputation for violence ”, and that Schuster and his family were threatened; that the Police Department initially undertook a limited and partial protection of the place of business and home of Schuster and his family, but failed to continue such protection. Nowhere is it alleged that the police undertook protection elsewhere. The complaint also alleges that Schuster was “allowed to be shot with a lethal weapon ”, sustaining injuries resulting in his death, on a public street at night; it is not alleged how near or how far from his home.
Sutton had already been arrested at the .time of the shooting, so I suppose we are to guess that the assailant was an unknowm, undescribed and unidentified associate of his. There is not, however, a single factual allegation in the complaint as to who did the threatening or who did the shooting, and mere conclusory allegations that Schuster’s death was due to defendant’s negligence will not fill this hiatus.
Of course, we must assume the factual allegations of a complaint to be true, but not unpleaded facts. Nor may we assume as true its conclusions of law. “ A complaint must state facts. General allegations of wrongdoing based upon undisclosed facts *98 do not state a cause of action ” (Gerdes v. Reynolds, 281 N. Y. 180, 183-184; see, also, Kalmanash v. Smith, 291 N. Y. 142, 153-154).
Assuming arguendo that defendant owed Schuster a legal duty of protection and that that duty was breached, the complaint still fails to allege a cause of action in negligence because it is devoid of a factual allegation that the breach of the duty was a cause in fact of Schuster’s death. There is no liability in tort unless the defendant’s wrongful conduct is a cause in fact of plaintiff’s injury or death. Under plaintiff’s theory of recovery, a duty to give his intestate protection arose because the criminal whose apprehension was aided by decedent had “ an unusually dangerous group of associates ”. Yet, as noted, there is no factual allegation in the complaint that decedent’s death was caused by one of these “ associates ” or that they threatened him. As Judge Cabdozo pointed out in Martin v. Herzog (228 N. Y. 164, 170),
“We must be on our guard, however, against confusing the question of negligence with that of the causal connection between the negligence and the injury.”
(See, also, Cole v. Swagler, 308 N. Y. 325, 331.)
Negligence presupposes the existence of a legal duty, and, as Chief Judge Conway outlines in his opinion, defendant did not fail in any legal duty. We have recently said (Williams v. State of New York, 308 N. Y. 548, 557):
‘6 Without duty, there can he no breach of duty, and without breach of duty there can be no liability.”
Appellant can point to no statute, and his counsel concedes he has been unable to find any precedent, creating ‘ ‘ a duty, the breach of which is actionable in tort, to provide protection to an informer ”.
In Steitz v. City of Beacon (295 N. Y. 51, 55), decided less than six months after Bernardine v. City of New TorTc (294 N. Y. 361), we held that while indeed there was a public duty to maintain a fire department, 1 ‘ that was all, and there was no suggestion ” that damages could be recovered by an individual against the city for omission to keep its water pipes in repair. In Murrain v. Wilson Line (270 App. Div. 372), the Appellate Division held that a municipality is not liable to an individual *99 for its failure to exercise a governmental function, namely, to provide adequate police protection, and we unanimously affirmed (296 N. Y. 845), less than two years after our decision in the Bernardme case. In Moch Co. v. Rensselaer Water Co. (247 N. Y. 160, 167-169), Judge Cabdozo stated that the failure ‘ ‘ to furnish an adequate supply of water is at most the denial of a benefit. It is not the commission of a wrong ”, and thereby distinguished that case from the negligence of the surgeon, the engineer and the manufacture. (See, also, Landby v. New York N. H. & H. R. R. Co., 199 Misc. 73, affd. 278 App. Div. 965, motion for leave to appeal denied 303 N. Y. 1014.) Thus it was settled in this State that a municipality is not liable for inadequate police or fire protection.
Matter of Quarles and Butler (158 U. S. 532) is clearly inapplicable here. That case involved the punishment under Federal statute of individuals guilty of an assault upon a person who had informed against them. Nor are the other cases relied on by the majority apt here. All of them dealt with entirely different factual patterns, and in each one of them the negligence consisted of some act of misfeasance, including McCrink v. City of New York (296 N. Y. 99) where the Police Commissioner persistently retained a patrolman who was clearly a known alcoholic and who shot and killed plaintiff’s intestate and wounded another; and Meistinsky v. City of New York (309 N. Y. 998) where the Police Commissioner appointed a policeman who had not received sufficient and proper training in the use of firearms and who subsequently killed another. In both of the latter cases, the police officers were a menace to the public at large, and third persons were killed as a result of negligent acts of commission. None of the cases relied on suggests liability for mere failure to provide police protection under the circumstances here claimed to be present.
Judge Van Voobhis states that Schuster owed the duty of informing the police of the whereabouts of Sutton, and that ‘ ‘ it matters little whether this duty be described as legal or moral ” (citing People ex rel. Central Trust Co. v. Prendergast, 202 N. Y. 188, 199-200, where a statute was involved). He then speaks of the ‘1 reciprocal governmental duty to take * * * measures to assure protection”. Are we to understand that it matters little whether the “ reciprocal govern *100 mental duty ” be described as legal or moral, and that liability may follow in either event?
Section 1848 of the Penal Law is clearly inapplicable. That section sets the limit to which the Legislature has been willing to go in establishing liability against municipal corporations to compensate individuals who aid the police. One can only conclude therefrom that the Legislature, as a matter of public policy, does not wish to extend liability to situations not embraced within the statute, for, as we said in the Steitz case (supra, p. 55),
“An intenten to impose upon the city the crushing burden of such an obligation [liability to individual citizens for inadequate fire protection] should not be imputed to the Legislature in the absence of language clearly designed to have that effect.”
Nevertheless, the majority would now rewrite the statute and extend its operation to informers.
Nor is there any validity to the claim that the voluntary assumption by the Police Department of the partial protection of plaintiff’s intestate at his home and place of business carried with it the legal obligation not to terminate such protee tion. The complaint shows that Schuster was shot on the street, and not at his home or place of business, and it does not allege that the Police Department ever undertook to protect Schuster on the highways or at any other place, outside of his home and office. They did not have him in protective custody. Oases involving affirmative acts of wrongdoing, such as Glanzer v. Shepard (233 N. Y. 236, 239 [certifying to the wrong weight of a shipment]), and Marks v. Nambil Realty Co. (245 N. Y. 256 [landlord making repairs negligently]) have no application here.
As to the third and fourth causes of action, I agree with the Chief Judge and the courts below that the additional allegations as to the representations allegedly made by unnamed policemen were no more than expressions of their opinions, in no way binding on the city.
We are not deciding the question of the city’s moral obligation to Schuster for the valuable information which he gave to the police. It may be here noted that our State Legislature *101 has provided (L. 1937, eh. 929) in the Administrative Code of the City of New York (§ 434a-32.0, subd. [b]) that the Police Commissioner is authorized to offer rewards to informers, and the Board of Estimate shall make the necessary appropriation for such purpose. In section 1848 of the Penal Law the Legislature has made it mandatory in the situation there embraced. It has not legislated further.
The consequences of the decision about to be handed down may not be overlooked. The courts are constantly made cognizant of the not uncommon practice of threats made to informers and prospective witnesses, especially in criminal cases. Police commissioners, in order to guard against possible claims and lawsuits against the municipal corporations they serve, may now be required in all such cases to furnish costly protection by providing at least three police officers to each such person every single day. The police would have to guess at the length of time such protection should be afforded— whether for days, months or even longer — and whether a jury would deem sufficient such protection as was decided upon. The cost to the municipal corporation of such protection would be incalculable.
The foregoing considerations, the absence of any statute or judicial precedent in support of the majority opinion, our own previous decisions with respect to liability for inadequate police and fire protection, the legislative policy thus far declared, and the absence of necessary factual allegations in the complaint all lead me to the inescapable conclusion that no cause of action is stated here.
Judges Dye and Ftjld concur with Judge Van Voorhis ; Judge McNally * concurring in a separate opinion in which Judges Dye, Ftjld and Van Voorhis also concur; Chief Judge Conway and Judges Desmond and Froessel dissent and vote to affirm, each in a separate opinion in which the others concur ; Judge Burke taking no part.
Judgment reversed, motion to dismiss complaint denied and matter remitted to Special Term for the entry of the essential order, with costs in all courts.

 Designated pursuant to section 5 of article VI of the State Constitution in place of Judge Burke, disqualified.