John J. Dillon, J.
The City of New Rochelle has moved to dismiss the complaint for failure to state a cause of action against the city. The complaint alleges 24 causes of action against various defendants, of which 8 are asserted against the City of New Rochelle. The causes of action numbered ninth, eleventh, thirteenth and fifteenth are alleged in behalf of the infant plaintiff to recover damages for personal injuries. The causes of action numbered tenth, twelfth, fourteenth and sixteenth are claims by the child’s father to recover damages for medical expenses and loss of services. The present motion is directed to these eight causes of action.
The complaint alleges that on January 26, 1961, the infant plaintiff while walking across certain school grounds and an adjacent public recreation area was attacked by one or more *721 unleashed and unmuzzled dogs and severely injured. The court is unable to distinguish between the ninth and thirteenth causes of action, both of which, allege that the city was negligent in permitting unleashed and unmuzzled dogs to roam about. The eleventh cause of action is based on nuisance. The fifteenth cause of action alleges that the city was negligent in contracting for the capture and impounding of dogs with the New Rochelle Humane Society, Inc., allegedly with knowledge of the inadequacy of that organization’s facilities. The question is whether, assuming the truth of all these allegations, there can be any liability on the part of the City of New Rochelle to the plaintiff. In determining that question all of the causes of action asserted against the city are governed by the same principles of law.
The answer is not to be found by simply deciding the general question of whether a municipality is or is not exercising a governmental function in controlling stray animals. The court finds no great difficulty in holding that the function is governmental in nature. No one except the municipality, or an organization acting under authority given by the municipality, would possess the power or the facilities to perform such a service effectively. No one else would even have a duty to perform the service in the case of animals not privately owned. The protection of the public against marauding animals, whether wild or domestic, is similar in nature to the protection furnished by a police department against the lawless and depraved elements among men. The purpose in either case is the promotion of public safety, which is one of the first functions of government. It follows that in providing for the restraint of dangerous animals the municipality acts in its sovereign capacity.
It does not follow, however, that on such a premise alone the city acquires a sovereign immunity from liability. It is familiar law that the civil divisions of the State have no independent sovereignty, and that when the State of New York waived its immunity by the enactment of section 8 of the Court of Claims Act the immunity of the municipal components of the State disappeared to precisely the same extent (Bernardine v. City of New York, 294 N. Y. 361). In the long catalogue of decisions since the Bernardine case the courts have undertaken to define the extent of the waiver. It is apparent from these decisions that the surrender of immunity is not absolute. The court has found no case, and no authority has been called to its attention, involving a state of facts similar to those presented here — at least not since the enactment of the statute waiving the State’s immunity. In Levy v. Mayor, etc., City of New York (1 Sandf., *722 465) it was held that a municipal corporation has no liability for failure to enforce an ordinance restraining swine from roaming at large upon the public streets. In Whittaker v. Village of Franklinville (265 N. Y. 11, 17) the Court of Appeals said that from the time of the decision in the Levy case “ it has been consistently decided- by the courts of this State that the failure of a municipal corporation to take affirmative action in a pure governmental matter imposes upon if no liability, as the failure to act constitutes a mere dereliction in the performance of a governmental function.” Those decisions antedated the enactment of section 8 of the Court of Claims Act. But they still have some validity. They were decided on the premise that mere passive negligence, or passive acquiescence in permitting a nuisance, will not impose liability on the municipality, A somewhat similar distinction has been carried forward into the recent cases. When the fault imputed to the city consists of a mere failure to act for the plaintiff’s protection there is no-liability even today (Steitz v. City of Beacon, 295 N. Y. 51; Murrain v. Wilson Line, 270 App. Div. 372, affd. 296 N. Y. 845). Stated more precisely, "the rule is that when a municipality acts in its governmental capacity for the- protection of the general-public it cannot be cast in damages for a mere failure to furnish effective protection to a particular individual to whom it has assumed no special duty. That was the principle of the Steitz and Murrain cases. On the other hand, when the city does some affirmative act which causes the injury, or which sets in motion a chain of events leading to the injury, a special duty may arise and liability may follow even when the municipality is performing a governmental function (Dunham v. Village of Canisteo, 303 N. Y. 498; Wilkes v. City of New York, 283 App. Div. 724, affd. 308 N. Y. 726; Meistinsky v. City of New York, 285 App. Div. 1153, affd. 309 N. Y. 998; Lubelfeld v. City of New York, 4 N Y 2d 455; Schuster v. City of New York, 5 N Y 2d 75).
In the present case the complaint fails to allege- any affirmative action of the city which resulted, either immediately or ultimately, in injury to the infant plaintiff. It appears from the fifteenth cause of action that the city had contracted wdtli the New Rochelle Humane Society, Inc., for the seizure and impounding of dogs. The contract, so far as the complaint describes it, was one expressly authorized by section 120 of the Agriculture and Markets Law. Assuming the truth of the allegation that the Humane Society’s facilities were inadequate, and that the city was aware of that fact, we are still confronted with the obstacle that there is no allegation of any affirmative act on the part of the city which caused the injury, and no suggestion *723 of any action by the city which would give rise to a duty toward the infant plaintiff as distinguished from the city’s obligation to protect the general public. The court can see no distinction between this case and Steitz v. City of Beacon (supra).
One further consideration is worthy of mention. Running through the decisions one can perceive the anxiety of the courts about new theories of liability which may have a far-reaching effect. Thus in Moch Co. v. Rensselaer Water Co. (247 N. Y. 160) the court was concerned about “ the assumption of a risk so overwhelming ” (p. 166) as that contended for by the plaintiff. The same phrase is quoted in Steitz v. City of Beacon (295 N. Y. 51, 55). If the present action is well founded the municipalities of the State will be required at their peril to impound every stray animal wandering abroad.
It follows from the foregoing that the four causes of action of the infant plaintiff against the City of New Rochelle, and the four derivative causes of action of the infant’s father against the city, must be dismissed.