■ CAROL FLORENCE, as Mother and Natural Guardian of DARRYLE L. DAVIS, an Infant, et al., Respondents, v MEYER GOLDBERG, Defendant, and LILLY TRANSPORTATION CORP. et al., Appellants.—In a negligence action to recover damages for personal injuries, etc., the City of New York and Lilly Transportation Corp. appeal from a judgment of the Supreme Court, Kings County, entered May 6, 1974, upon a jury verdict, which judgment is in favor of plaintiffs and against them. Judgment reversed, on the law and the facts, and new trial granted limited solely to the issue of damages, with costs to abide the event. The infant plaintiff was a 6-1/2-year-old first-grade student at P.S. 191, which is located on Park Place, between Buffalo and Ralph Avenues, in Brooklyn. He had only to cross one street, Ralph Avenue, to get from the school to his home on Park Place. Ralph Avenue is a busy two-way street and, beginning long prior to the events in question, a civilian school crossing guard had been regularly assigned to the intersection of Ralph Avenue and Park Place. Her duties were to assist the school children crossing that street. The plaintiff mother had initially escorted the infant plaintiff to and from school. However, after continually observing the crossing guard assist the children across the street, she determined that she could rely upon the guard to assist her son and returned to work. On November 14, 1967 the infant plaintiff was on his way home from school when he was struck, in the subject intersection, by a taxicab operated by defendant Meyer Goldberg and owned by appellant Lilly Transportation Corp. (The action against Goldberg was discontinued during the trial.) It is conceded that the infant was crossing Ralph Avenue against the light at the time of the accident. It is also conceded that the regularly assigned civilian school crossing guard was absent from her post that day, having called in sick early that morning. The claim against appellant City of New York, in negligence, is that contrary to departmental regulations, the police had failed to assign a substitute for the absent crossing guard. Police Department rules and regulations provide that, when unable to report for duty, a

school crossing guard "shall notify the [police precinct] desk officer sufficiently in advance so that other arrangements can be made for covering the crossing" (Police Dept. of N.Y.C., Rules and Regulations, ch 23, § 12.1). The guard on duty is also to communicate with the station house before each period of duty [e.g., lunch time] in the manner prescribed by the precinct commander (ch 23, § 11.2). Further, "a patrolman or superior officer shall notify the desk officer if a school crossing guard is absent from the crossing [and] The desk officer shall assign a patrolman to cover the crossing" (ch 23, § 12.3). The rules and regulations also provide, with respect to the deployment of uniformed patrolmen to cover school crossings, that where there is more than one school crossing on a post, the commanding officer shall designate the school crossing to be covered by the patrolman on that post; that patrolmen assigned to posts on which no school crossings are located shall be assigned to uncovered school crossings on other posts; and that, for this purpose, there shall be posted on the bulletin board a list of school crossings, showing the time and manner of coverage, including those covered by school crossing guards (Police Dept. of N.Y.C., Rules and Regulations, ch 15, § 34.0). In addition, when all school crossings cannot be covered, those considered most dangerous shall be covered (ch 15, § 34.1); and, if more urgent police duty requires a patrolman to leave his school crossing assignment, he shall notify the station house and the principal of the school so that the principal may take necessary action to safeguard the children during the patrolman's absence (ch 15, § 35.0). Upon the trial, the city attempted to establish that there were no police officers available to substitute for the absent crossing guard on the day of the accident and that this was not deemed one of the most hazardous crossings. Plaintiffs, on the other hand, contended that there were police officers available for reassignment to the school crossing and that the subject intersection was hazardous. The jury resolved the evidentiary conflict in favor of plaintiffs; the city does not challenge that factual determination on appeal. The city does argue, however, that the complaint should have been dismissed as a matter of law on the ground that it cannot be held liable to an individual, as to whom no special duty was assumed, for its failure to furnish adequate police protection. The question of the city's liability to the infant plaintiff for failure to make other arrangements for covering the school crossing in the regular guard's absence is one of first impression. New York courts have consistently held that there exists no general liability "to the public for civil damage in event of failure to supply adequate police or fire protection" *(Motyka v City of Amsterdam,* 15 NY2d 134, 139). Stated another way, "a municipality, acting in its governmental capacity for the protection of the general public, cannot be cast in damages for a mere failure to furnish adequate protection to a particular individual to whom it has assumed no special duty" *(Evers v Westerberg,* 38 AD2d 751, affd 32 NY2d 684). At bar, however, we hold that the city has assumed a special duty to the infant plaintiff, and to other similarly situated school children, insofar as it has provided personnel to act as school crossing guards and has charged them with the responsibility for the safety of these school children at designated crossings. The assumption of this special duty is premised upon the recognition that the class to be benefited cannot reasonably be expected to protect itself in the normal course of events. It is recognized that young school children do not necessarily obey traffic control signals and that crossing guards are employed not to direct traffic but, specifically, to protect the children and, when necessary, to escort them across the street (see Police Dept. of N.Y.C., Rules and Regulations, ch 23, § 8.0). The nature of the duty

assumed is also different from the protection afforded the general public against such hazards as criminal wrongdoing or violations of fire or building codes. This protective duty is carefully limited as to time (hours when the children will be traveling to and from school), place (designated school crossings), beneficiaries (school children) and purpose (safeguard the children at the school crossing and, if necessary, escort them safely across the street). It is this assumption of a special duty, and its nature, which distinguishes this case from others such as *Riss v City of New York* (22 NY2d 579), *Tuthill v City of Rochester* (32 AD2d 873, affd 27 NY2d 558), *Bass v City of New York* (38 AD2d 407, affd 32 NY2d 894), *Evers v Westerberg (supra)* and *Whitney v City of New York* (27 AD2d 528). Once having undertaken to protect the children at designated school crossings, and having induced reliance thereon by parents and others intimately concerned with the children's safety, the city is charged with a duty of reasonable care in performing that duty. Indeed, the various departmental regulations hereinbefore cited are designed to ensure just such proper performance. Governmental liability is compelled by the fact that the duty neglected in this case was assumed for the sole purpose of protecting the infant plaintiff, and others similarly situated, against the very hazard from which that plaintiff suffered (see *Steitz v City of Beacon,* 295 NY 51, 56). The same result is reached by adopting the standard employed by Chief Judge Cardozo in *Moch Co. v Rensselaer Water Co.* (247 NY 160, 167), and reiterated in *Schuster v City of New York* (5 NY2d 75): "If conduct has gone forward to such a stage that inaction would commonly result, not negatively merely in withholding a benefit, but positively or actively in working an injury, there exists a relation out of which arises a duty to go forward". The city's assumption of this protective duty was premised on knowledge of the dangerous situation existing by virtue of the presence of unsupervised young school children at a busy traffic intersection. Its sudden cessation of this protection, without notice to those relying upon its continuance, left the infant plaintiff without any alternative means of protection. We reject the argument that, because absent civilian crossing guards are to be replaced by uniformed police officers, the rule of nonliability for inadequate police protection must prevail since a civil jury may not exercise the power to determine how the limited police resources of the community should be allocated. Unlike the situation in *Riss v City of New York* (22 NY2d 579, *supra),* wherein such an argument was accepted, this is not a case of the denial of a request for individual police protection against an alleged criminal wrongdoer. More important, there has already been a legislative-executive decision that community and police resources shall be allocated for the protection of school children at designated school crossings. The only question remaining for the courts is whether the city has exercised reasonable care in performing the responsibility it has undertaken. That question was answered in the negative and we affirm the finding of liability. We also uphold the jury's determination of negligence as respects appellant Lilly Transportation Corp. and its apportionment of liability between the appellants. However, we direct a new trial, limited solely to the issue of damages, because of errors by the trial court in allowing plaintiffs' counsel to (1) cross-examine the city's medical expert with respect to textbooks which the expert refused to accept as authoritative, (2) read or paraphrase portions of those texts in summation and (3) comment on the expert's "disagreement" therewith. It is well settled that, upon cross-examination, counsel may seek to discredit an expert witness by reference to texts or articles, but only insofar as they are recognized by the expert as authoritative upon the

subject as to which he has expressed an opinion *(People v Feldman,* 299 NY 153, 168; *Messina v Renison,* 21 AD2d 803). Medicine, and particularly neurology, is a dynamic science; an expert may properly reject proffered texts as authoritative on the ground that they are outdated. His rejection of these texts is not rendered nugatory simply because the texts remain upon library shelves, presumably having been put there at a time when they were considered authoritative and never since removed. It was also improper for counsel to call attention to the hearsay contents of the texts in summation (see *Zeleznik v Jewish Chronic Disease Hosp.,* 47 AD2d 199). These errors are sufficiently prejudicial to require a new trial on the issue of damages as they went to the heart of the most seriously disputed issues before the jury, the causation and extent of the infant plaintiff's claimed mental retardation, seizures and behavioral problems. Rabin, Acting P. J., Martuscello, Christ and Shapiro, JJ., concur; Munder, J., dissents and votes to reverse the judgment and dismiss the complaint, with the following memorandum: I dissent because in my opinion this case boils down to a failure on the part of the city to provide adequate police protection; liability has never been imposed in such a situation. As this court stated in *Bass v City of New York* (38 AD2d 407, affd 32 NY2d 894), in an opinion by then Presiding Justice Rabin (p 413): "It is well settled that a municipality, acting in its governmental capacity for the protection of the general public, cannot be cast in damages for a mere failure to furnish adequate police protection to a particular individual to whom no special duty is owed *(Motyka v City of Amsterdam,* 15 NY2d 134, *supra; Steitz v City of Beacon,* 295 NY 51; *Murrain v Wilson Line,* 270 App Div 372, affd 296 NY 845; cf. *Schuster v City of New York,* 5 NY2d 75)." I see no reason to change or expand that rule of liability at this time; nor am I convinced that the city owed a "special duty" to the injured infant plaintiff. The accident here was attributable in part (the jury so found) to the city's failure to have a police officer replace the regular crossing guard at the intersection near the school which the infant plaintiff attended. The guard was ill on the day of the accident and so advised the local station house. The police, however, were unable to supply a replacement because of a shortage of personnel. The infant was struck by a taxicab driven by defendant Goldberg. It seems to me that these facts clearly establish the city's nonliability. The city, particularly in these days of budgetary crisis and cutbacks and layoffs in the number of policemen, cannot be held liable simply because it did not *prevent* an accident. In a slightly different context—different in that the protection spoken about was protection against crime rather than protection against traffic accident —the Court of Appeals, in *Riss v City of New York* (22 NY2d 579, 581), recognized the restrictions which fiscal and monetary policies can have on a city's ability "to protect the public generally from external hazards". Judge Breitel noted as follows *(supra,* pp 581–582): "The amount of protection that may be provided is limited by the resources of the community and by a considered legislative-executive decision as to how those resources may be deployed. For the courts to proclaim a new and general duty of protection in the law of tort, even to those who may be the particular seekers of protection based on specific hazards, could and would inevitably determine how the limited resources of the community should be allocated and without predictable limits. This is quite different from the predictable allocation of resources and liabilities when public hospitals, rapid transit systems, or even highways are provided. Before such extension of responsibilities should be dictated by the indirect imposition of tort liabilities, there should be a legislative determination that that should be the scope of public responsibil-

ity". In this case we have to keep in mind two key factors. The first is that the driver of the vehicle which injured the infant plaintiff was *not* a policeman and thus this case is distinguishable from those tort cases in which the actual perpetrator or instrumentality was a city employee (see, e.g., *McCrink v City of New York,* 296 NY 99; *Lubelfeld v City of New York,* 4 NY2d 455). The second is that there was no special relationship (created either by statute or by prior dealings between the parties) between the city and the injured plaintiff. Hence, those cases in which a special relationship was found are not controlling (see, e.g., *Foley v State of N. Y.,* 294 NY 275; *Schuster v City of New York,* 5 NY2d 75; *Smullen v City of New York,* 28 NY2d 66). I am not persuaded that the infant here, by reason of the fact that a school crossing guard was assigned to the particular intersection, was a member of a special class requiring or entitled to more protection from the city than that afforded the general public. Taking all the evidence and jury findings in the light most favorable to plaintiffs, I would dismiss the complaint as to the city because I find no breach of any duty owed to them by the city (see *Steitz v City of Beacon,* 295 NY 51). I would also dismiss the complaint as against defendant Lilly Transportation Corp., the owner of the taxicab which struck the infant plaintiff. The jury's verdict against this defendant was completely without evidential support. The uncontroverted evidence was that the cab was proceeding at a very slow rate of speed, that the traffic light was green in its favor and that the infant darted out from behind a parked truck and ran into the left front fender of the cab. The cab was stopped within four or five feet, in other words, almost immediately. There was no showing of negligence on the part of the driver.