OPINION OF THE COURT
Elliott Wilk, J.
On May 6, 1977, Robert Susser purchased a 1969 Chrysler Imperial automobile. On July 1, 1977, Mr. Susser legally *985 parked his car on an upper west side Manhattan street. On July 2, 1977, Mr. Susser discovered that his car was gone.
Mr. Susser reported the theft to the 24th police precinct at once and was told that an alarm describing the stolen vehicle would be communicated to other police precincts. The police cautioned Mr. Susser that in the unlikely event he located the car he was to call them immediately and not attempt to move it himself.
On the morning of July 3, Mr. Susser prevailed upon his friend, Richard Cotton, to delay a trip to Massachusetts and canvass the local streets with him in search of the Chrysler. As they were about to abandon their efforts, they discovered the automobile parked on Manhattan Avenue between 109th and 110th Streets.
As instructed, Mr. Susser called the 24th precinct immediately. While waiting for the police to arrive, he entertained visions of police officers dusting the car for fingerprints and traps being laid to apprehend the thieves. But no police personnel arrived. Mr. Susser then dialed 911. Still no police. Again and again he called 911. No police.
Exasperated, he dispatched Mr. Cotton to the 24th precinct while he remained to guard the car. During Mr. Cotton’s absence, Mr. Susser flagged down a passing police car and told the officer his tale of woe. Mr. Susser then opened the door of the Chrysler and the officer was able to observe that the ignition switch had been punched out and replaced with a phony switch. The officer then requested that Mr. Susser accompany him to the 24th precinct in order to fill out various police forms and to "clear” the alarm which had been previously communicated to other police officers throughout the city. Mr. Susser questioned the wisdom of this plan and asked who would safeguard the car in their absence. The police officer removed the coil wire and assured Mr. Susser that the car would remain inoperable.
Unpersuaded, Mr. Susser stated his intention to stay with his Chrysler and suggested that the officer "clear the alarm” on his squad car radio. The officer refused, explaining that the alarm had to be cleared at the precinct. Mr. Susser was told that he could not take possession of his car until the alarm was cleared and the proper police forms completed.
Mr. Susser was again directed to go to the precinct with the officers, which he did. At the precinct, Mr. Cotton, already very late, left for Massachusetts. Mr. Susser was told to wait.
*986 After a while, he asked why he had to wait so long. He was informed that it sometimes takes up to three hours to clear an alarm. Mr. Susser bolted from the precinct, and, accompanied by a mechanic from his local garage, returned to Manhattan Avenue to reclaim his car. The car was gone.
Robert Susser brought a lawsuit against the City of New York.
Before the trial began, Mr. Susser submitted, by documentary evidence, proof of the purchase price of the car ($620); proof of payment of sales tax ($49.60); proof of the cost of improvements ($449.62); and proof of his expenditures for car rentals following the theft ($656.42). Nonetheless, Mr. Susser offered to accept $800 in full satisfaction of his claim. An attorney from the office of the Corporation Counsel, attorneys for the City of New York, offered Mr. Susser $400.
The trial occupied portions of two court days. Mr. Susser called himself, Mr. Cotton and a subpoenaed police officer as witnesses. The City of New York called two witnesses — a police officer and a detective specializing in auto theft cases. The cost of the litigation far exceeded the $800 for which Mr. Susser had been prepared to settle.
I am aware that the Corporation Counsel must protect the City of New York against both fabricated and inflated claims. Although settlement of such claims may, on a cost-basis analysis, sometimes appear to benefit the city due to the expense of trial, the Corporation Counsel cannot capitulate to greedy and dishonest litigants. Accordingly, it must often defend claims where the cost of trial is greater than the amount claimed in order to maintain the integrity of the city.
In this case, however, Robert Susser advanced a valid, honest claim. He adduced proof of his legitimate damages, which were neither inflated nor distorted.
Had Mr. Susser resorted to self-help, he would have his car today. Instead, as a reasonable person acting in a responsible fashion, he asked the police for help. By so doing, he unwittingly unleashed upon himself the bureaucratic inefficiency of both the police department and Corporation Counsel, whose behavior was at best comical and at worst cruel.
In the absence of legislation to the contrary, the State has no responsibility for the acts of its officers or employees in the exercise of govermental functions. (Olmstead v Britton, 48 AD2d 536.) New York removed the cloak of sovereign immu *987 nity with the adoption of section 8 of the Court of Claims Act, which establishes the liability of a municipality for the negligence of its officers or employees. (Durham v Village of Canisteo, 303 NY 498; Bernardine v City of New York, 294 NY 361.) Nonetheless, under certain circumstances a vestige of sovereign immunity shields the city from civil liability when it fails to safeguard the general public. (Motyka v City of Amsterdam, 15 NY2d 134; Steitz v City of Beacon, 295 NY 51; Evers v Westerberg, 38 AD2d 751.) As was stated in Spiegler v School Dist. of City of New Rochelle (39 Misc 2d 720, affd 19 AD2d 751), when a governmental body acts in its governmental capacity to protect the public, it cannot be held liable for its failure to protect a person to whom it has assumed no special duty. The police owed no special duty to Mr. Susser to protect his automobile while it was parked on the street. The police did not even have a special obligation to locate Mr. Susser’s car after it was stolen. However, once the car was located and the police assumed command, their general obligation to Mr. Susser was transformed into a special duty. They were then obliged to act in a fashion defined by "[t]he risk reasonably to be perceived”. (Palsgraf v Long Is. R. R. Co., 248 NY 339, 344.) This they failed to do. Where a special duty is created, the city is liable for negligent conduct which results in injury rather than a mere failure to confer a benefit. (Schuster v City of New York, 5 NY2d 75; Amoruso v New York City Tr. Auth., 12 AD2d 11.)
The City of New York apparently bases its defense in this lawsuit upon the officer’s judgment that removing the coil wire would render the car inoperable. Coil wires are to car thieves as sneakers are to burglars. Any reasonable person could have foreseen, as Mr. Susser did, that a car thief would be undeterred by the removal of a coil wire.
No acceptable explanation was advanced for the requirement that the alarm be cleared only at the precinct. Even more incredible was the justification offered by the police for refusing to permit Mr. Susser to assume custody of the car while the alarm was outstanding. It was suggested that another officer might mistake Mr. Susser for the car thief and injure him or an innocent bystander. Mr Susser was prepared to engage a mechanic to start the car and drive it, with a police escort, to the precinct or to a garage. This involved no risk to anyone. The course of action taken by the police was unnecessary and unreasonable.
*988 Defendant is liable for the proximate consequences of the negligence attributable to it. While the damages cannot be remote, they need not be immediate. (Steitz v Gifford, 280 NY 15.)
Upon the credible evidence presented at trial, Robert Susser is awarded damages in the amount of $1,775.64.