## In re FRANKLIN NATIONAL BANK SECURITIES LITIGATION

**Robert GOLD, on behalf of himself and on behalf of all others similarly situated, Plaintiff,**

**and**

**Louis Pergament, Intervenor-Plaintiff,**

**v.**

**ERNST & ERNST et al., Defendants.**

**No. 75 C 684.***

United States District Court,
E. D. New York.

Jan. 17, 1978.

For Supplemental Opinion May 4, 1978.
See 449 F.Supp. 574.

* And all other actions consolidated for pre-trial purposes in particular: 74 C 894, 74 C 894A, 76 C 494, 76 C 515, 76 C 2339 and 77 C 293.

Milberg, Weiss, Bershad & Specthrie, New York City, Liaison Attys. for class plaintiffs, for plaintiff Gold in No. 75 C 684.

Jessel Rothman, Mineola, N. Y., for intervenor plaintiff Pergament in No. 75 C 684; Melvyn I. Weiss, Jerome M. Congress, New York City, of counsel.

Casey, Lane & Mittendorf, New York City, for plaintiff in Nos. 76 C 2339, 77 C 293.

Davis, Polk & Wardwell, New York City, for defendant in No. 76 C 2339.

Kelley, Drye & Warren, New York City, for defendant in No. 77 C 293.

Casey, Lane & Mittendorf, New York City, for plaintiff in Nos. 76 C 494, 76 C 515; William E. Kelly, Edward C. Cerny, III, New York City, of counsel.

Rivkin, Leff & Sherman, Garden City, N. Y., for National Surety and Firemen's Fund in Nos. 76 C 494, 76 C 515; Leonard L. Rivkin, Garden City, N. Y., Jeffrey Silberfeld, Point Lookout, N. Y., Harry Weinig, Hempstead, N. Y., of counsel.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for Aetna Cas. & Sur. Co. in Nos. 76 C 494, 76 C 515; Mark A. Belnick, Richard Wasserman, New York City, of counsel.

Shea, Gould, Climenko, Kramer & Casey, New York City, for Ins. Co. of N. A. in Nos. 76 C 494, 76 C 515; Ronald H. Alenstein, Robert Hawley, New York City, of counsel.

Barrett, Smith, Schapiro & Simon, New York City, for Corbin in Nos. 76 C 494, 76 C 515; Michael O. Finkelstein, New York City, of counsel.

Mordecai Rosenfeld, New York City, for plaintiff in Nos. 74 C 894, 74 C 894A, 74 C 1174.

Casey, Lane & Mittendorf, New York City, for FDIC in Nos. 74 C 894, 74 C 894A, 74 C 1174.

Poletti, Freidin, Prashker, Feldman & Gartner, New York City, for Crosse in Nos. 74 C 894, 74 C 894A, 74 C 1174.

Mudge, Rose, Guthrie & Alexander, New York City, for Sindona in Nos. 74 C 894, 74 C 894A, 74 C 1174.

Chadbourne, Parke, Whiteside & Wolff, New York City, for defendants in Nos. 74 C 894, 74 C 894A, 74 C 1174.

DiFalco, Field & O'Rourke, New York City, for Bardoni in Nos. 74 C 894, 74 C 894A, 74 C 1174.

Townley, Updike, Carter & Rodgers, New York City, for Andersen in Nos. 74 C 894, 74 C 894A, 74 C 1174.

Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for Gleason et al. in Nos. 74 C 894, 74 C 894A, 74 C 1174.

Barrett, Smith, Shapiro & Simon, New York City, for Franklin N. Y. Corp. and Corbin in Nos. 74 C 894, 74 C 894A, 74 C 1174.

Hughes, Hubbard & Reed, New York City, for Franklin Nat. Bank in Nos. 74 C 894, 74 C 894A, 74 C 1174, 75 C 1611, 76 C 539.

Breed, Abbott & Morgan, New York City, for Schreiber in Nos. 74 C 894, 74 C 894A, 74 C 1174.

David G. Trager, U. S. Atty., Brooklyn, N. Y., Henry Brachtl, New York City, for James Smith in Nos. 74 C 894, 74 C 894A, 74 C 1174.

Wachtell, Lipton, Rosen & Katz, New York City, for Tisch in Nos. 74 C 894, 74 C 894A, 74 C 1174.

Battle, Fowler, Lidstone, Jaffin, Pierce & Kheel, New York City, for Luftig in Nos. 74 C 894, 74 C 894A, 74 C 1174.

David G. Trager, U. S. Attorney, Brooklyn, N. Y.; J. Christopher Jensen, Asst. U. S. Atty.; James P. Klapps, Trial Atty., Civil Division, U. S. Depart. of Justice, Washington, D. C., for United States of America in Nos. 76 C 494, 76 C 515; Dorothy S. Kulig and Peter C. Schaumber, Office of the Comptroller of the Currency, Washington, D. C., of counsel.

## OPINION

PLATT, District Judge.

### Statement

The United States of America, a third-party defendant in *Federal Deposit Insurance Corporation v. National Surety Corporation, et al.,* 76 C 494, and *Corbin v. National Surety Corporation, et al.,* 76 C 515, moves pursuant to Rule 12 of the Federal Rules of Civil Procedure (FRCP) to dismiss the third-party complaints of the National Surety Corporation, Fireman's Fund Insurance Company, the Aetna Casualty and Surety Company, and the Insurance Company of North America ("Insurance Companies") on the grounds that this Court lacks subject matter jurisdiction over the claims and that the third-party complaints fail to state a claim upon which relief can be granted.

The Federal Deposit Insurance Corporation ("FDIC") moves pursuant to FRCP 12 to dismiss various counterclaims and affirmative defenses asserted against it in *FDIC v. National Surety Corporation, et al., supra, FDIC v. Ernst & Ernst,* 76 C 2339, and *FDIC v. Continental Bank International,* 77 C 293, by the Insurance Companies, Ernst & Ernst, and Continental Bank International ("CBI").

Ernst & Ernst moves pursuant to FRCP 13, 14 and 15 to amend its answer in various respects in *Gold v. Ernst & Ernst,* 75 C 684, and *FDIC v. Ernst & Ernst, supra,* and, by serving a third-party complaint, to bring in as third-party defendants in these two cases the United States and various directors, officers and/or other employees of Franklin National Bank ("FNB") and Franklin New York Corporation ("FNYC"). Ernst & Ernst also moves to amend its answers to third-party complaints served on it in *FDIC v. National Surety Corporation, et al., supra,* and *Corbin v. National Surety Corporation, et al., supra,* so as to add cross-claims against the United States and various directors, officers, and/or other employees of FNB and FNYC. In addition, certain individual defendants have joined Ernst & Ernst's motions and also seek to add claims against the United States.

### FACTS

On October 8, 1974, the Franklin National Bank was declared insolvent by the Comptroller of the Currency who appointed the FDIC as receiver of FNB. On the same day Judge Judd of this Court approved a purchase and assumption agreement whereby certain assets of FNB were transferred to the European-American Bank and Trust Company as purchasing (of certain assets) and assuming (of certain liabilities) bank. *In re Franklin National Bank,* 381 F.Supp. 1390 (E.D.N.Y.1974). The FDIC as receiver sold to itself in its corporate capacity all the remaining assets of FNB including the rights of the FNB on various Bankers Blanket Bonds. Those bonds insured FNB and its parent holding company, FNYC, against loss through any dishonest or fraudulent act of employees of either corporation.

The FDIC has brought suit against the issuers of those bonds, the above-named Insurance Companies. Sol Neil Corbin as Trustee in Bankruptcy of FNYC also seeks recovery on those bonds. *See Federal Deposit Insurance Corp. v. National Surety Corp.,* 425 F.Supp. 200 (E.D.N.Y.1977).

The FDIC has also sued the auditor of FNB, i. e., Ernst & Ernst, in *FDIC v. Ernst*

& Ernst, supra, based on a claim of purported negligence of Ernst & Ernst in its auditing of FNB. That firm is also being sued in a stockholder class action, *Gold v. Ernst & Ernst, supra*, on substantially the same grounds.

Finally, the FDIC is suing CBI, in *FDIC v. Continental Bank International, supra*, based on a claim of purported negligence of CBI in failing to notify FNB about the past employment record of an employee alleged to have subsequently caused FNB significant monetary losses.

The facts leading up to the collapse of FNB on October 8, 1974 are, to say the least, complex. Judge Judd in a related case, *Huntington Towers v. Franklin National Bank*, 75 C 972 (E.D.N.Y. July 1, 1976), aff'd in part, rev. in part, 559 F.2d 863 (2d Cir. 1977), summarized those facts as follows (at p. 6):

"The Comptroller's affidavit in support of his motion for summary judgment sets forth that as of December 31, 1973 Franklin was the twentieth largest bank in the United States, with $5 billion in resources, $3.7 billion of total deposits, and 103 branches in addition to its main office. The stock of its holding company, Franklin New York Corporation (FNYC), was publicly owned, and registered with the Securities & Exchange Commission. A regular examination of Franklin by the Comptroller, begun on November 14, 1973 and concluded on March 8, 1974, showed that Franklin's total resources had grown much faster than its capital; that its growth had been financed almost entirely by short-term borrowed funds representing about 50 percent of the bank's liabilities; and that it had loans which were subject to criticism, although not necessarily uncollectible, amounting to more than its equity capital of $170 million.

"During the week of May 6, 1974, the Comptroller's Office and the Federal Reserve System learned from Franklin that severe losses had occurred in its foreign exchange department, that announcement of these losses would cause a severe liquidity crisis, and that an immediate and massive loan from FRB (Federal Reserve Bank of New York) might be necessary. On May 12, 1974, FNYC, Franklin's parent corporation, announced that the foreign exchange department of Franklin had sustained losses of $12 million and that additional losses might be as high as $25 million. Trading in securities of FNYC was promptly suspended. These announcements caused a large run-off of borrowings, in spite of the announcement that the Federal Reserve System would advance funds to Franklin as needed, within the limits of acceptable collateral. Within ten days (by May 22, 1974), the loans from FRB reached an amount of $1,125 billion.

"Between May and October, the Comptroller's Office endeavored to develop long-term solutions to Franklin's problems, including efforts to obtain help from other banks with its liquidity problems, to arrange a purchase of Franklin by some other bank, and to negotiate with FDIC to assist a purchase and assumption of Franklin's assets and liabilities by another commercial bank. A substantial impairment of the bank's equity capital was revealed by a special examination begun on August 14, 1974. By October 7, 1974, FRB informed the Comptroller that continuation of its credit assistance to Franklin (which amounted to $1.768 billion on October 2nd) would no longer be in the public interest. The Comptroller declared Franklin insolvent at 3:00 p.m. on October 8, 1974."

*See generally*, H.Rep.No.94–1669 (*Adequacy of the Office of the Comptroller of the Currency's Supervision of Franklin National Bank*), 94 Cong., 2d Sess. (1976).

The Insurance Companies in their third-party complaints against the United States, essentially allege that the bank examinations and the other regulatory functions described above were conducted negligently, thus contributing to the losses at FNB. Substantially similar allegations are made by CBI in its Seventh Defense and by Ernst & Ernst in its proposed cross-claims and third-party complaints dealing with the United States.

In addition, some of the Insurance Companies suggest, in the broad parameters of their third-party complaints [1] and in their memoranda supporting same, that the United States, via the Federal Reserve Board, the Comptroller, and FDIC, went beyond its normal regulatory role in the instant case and, from some point prior to May, 1974, participated to some extent in the actual operation of FNB.

Thus, for example, at page 29 of the memorandum of the National Surety Corporation and Fireman's Fund Insurance Company, these parties state as follows:

"Finally, Fireman's has pleaded, in paragraph 11, that employees of the OCC (Office of the Comptroller of the Currency) voluntarily undertook to issue orders and directives and make recommendations and suggestions with which they knew FNB was *required* to comply. This is support for Fireman's contention that the USA was under a duty to act with due care with respect to those orders, directives, recommendations and suggestions."

Also, in the affidavit of Mark Belnick submitted in opposition to the Government's motion to dismiss Aetna Casualty and Surety Company's third-party complaint against the United States, it is stated that (at p. 6):

"During the period from at least 1969 through 1974, the Government actively involved itself in FNB's affairs, undertook intensive regulation and supervision of FNB's operations, and established a constant federal presence at FNB. It did so not only through frequent examinations of the bank (including 'special' examinations of the bank's Foreign Exchange Department), but through regular communications with the officers and directors of FNB and FNYC. These communications concerned matters ranging from the bank's general condition to increases in the bank's capital to the opening of new bank branches and even to FNB's investment in its own office space. Moreover, the Government was not merely exchanging information with FNB—it was giving advice, making recommendations, and at times urging or directing actions or procedures."

Further, the Insurance Companies argue that since discovery is not completed yet, they have not had a full opportunity to develop all the facts in support of their position. They argue that upon the completion of discovery that the facts may well show that the Government's involvement in the operation of FNB was so extensive that the Government replaced the officers and directors of FNB, and to an extent ran the bank itself.

As these are motions to dismiss and to amend pleadings, we only must decide whether the theories of recovery state claims upon which relief can be granted and so we will assume the truth of all the above allegations. However, it should be clearly understood that the decision below based on that assumption is without prejudice to motions for summary judgment under Rule 56 at the completion of discovery if no facts are developed that support this assumption.

We do note, however, that at the moment the parties are in some dispute as to whether the negligence of the Government arose from too much involvement in FNB or too little. The memorandum of Continental Bank International in opposition to the United States motion to dismiss the third-party complaints, for example, at page eight, states that the Government agencies "stood by for over four years and did virtually nothing to remedy the deficiencies in the face of successive examinations which showed that deficiencies were growing progressively more severe." This is in substantial contrast to the allegations suggested by the parties, as discussed above, that the United States took an active part in the operation of FNB.

---

1. Three out of four of the Insurance Companies essentially allege in their third-party complaints that the United States assumed a duty to FNB by virtue of its actions with respect to FNB. While such allegations do not specifically mention "extra-regulatory actions" on the part of the United States, they arguably encompass such actions.

As will be discussed below, however, the crucial question is whether the United States by its actions assumed a duty to FNB, its officers, and its directors. If the Government can show that it was in fact uninvolved in the affairs of FNB as indicated below, this would support a motion for summary judgment, but at the moment we are concerned with whether the third-party complaints, counterclaims and cross-claims in question state valid claims.

Based on the above allegations of misconduct by the Government, the Insurance Companies have filed third-party complaints against the United States and counterclaims and defenses against the FDIC alleging that, if they are liable on their bonds, the United States and the FDIC are liable to them. CBI has also asserted those allegations by way of a defense against FDIC. The United States and the FDIC have moved to dismiss these claims and defenses. Likewise, Ernst & Ernst and others seek leave to amend their answers to serve third-party complaints and cross-claims to state claims for contribution against the United States and the FDIC based on a purported liability arising from the alleged misconduct.

This Court now turns to a separate analysis of these various motions.

I—*The United States Motion to Dismiss.*

■ The United States is immune from suit for reasons of sovereign immunity except as it consents to be sued. The Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.* .This waiver is specifically contained in 28 U.S.C. § 2674 which states in relevant part as follows:

"The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages."

■ The Government first argues that this waiver of sovereign immunity does not cover the case at bar because no "private individual" could be liable for bank exami-

nations or other regulatory activities as this is an exclusively governmental function.

However, the Supreme Court in *Indian Towing Company v. United States,* 350 U.S. 61, 67–68, 76 S.Ct. 122, 126, 100 L.Ed. 48 (1953), stated as follows:

"While the area of liability is circumscribed by certain provisions of the Federal Tort Claims Act, see 28 U.S.C. § 2680, 28 U.S.C.A. § 2680, all Government activity is inescapably 'uniquely governmental' in that it is performed by the Government.

\*   \*   \*   \*   \*   \*

"On the other hand, it is hard to think of any governmental activity on the 'operational level,' our present concern, which is 'uniquely governmental,' in the sense that its kind has not at one time or another been, or could not conceivably be, privately performed.

"There is nothing in the Tort Claims Act which shows that Congress intended to draw distinctions so finespun and capricious as to be almost incapable of being held in the mind for adequate formulation."

Thus, the Supreme Court rejected that argument, and instead rested its decision on whether the United States had a duty to the plaintiffs. Therefore, we too reject the distinction between governmental and non-governmental activities and turn to the question of duty.

*Existence of a Duty on the Part of the United States*

The Insurance Companies argue there are two possible sources of a duty here: one based on statutes and the other based on the actual actions of the United States in light of the law on assumption of a duty.

We note first and parenthetically that if the United States owed any duty, it was to FNB. The Insurance Companies can only claim against the United States if they pay on their bonds and "step into the shoes" of FNB. At that point they could assert this claim of duty against the United States. Thus, the third-party complaints here are

contingent claims, contingent on the Insurance Companies' liability and payment. *See Federal Deposit Insurance Corp. v. National Surety Corp.,* 434 F.Supp. 61 (E.D.N.Y.1977).

### Statutory Duty

■ The Insurance Companies argue that the United States owed a duty imposed by statute. In this regard, they cite a number of statutes which involve the powers of the FDIC, the Comptroller and the Federal Reserve Board to examine banks and issue orders in regard to those banks. However, they rely principally on 12 U.S.C. § 481 which states in part as follows:

"The Comptroller of the Currency, with the approval of the Secretary of the Treasury, shall appoint examiners who shall examine every national bank twice in each calendar year, but the Comptroller, in the exercise of his discretion, may waive one such examination or cause such examinations to be made more frequently if considered necessary. The waiver of one such examination as above provided shall not be exercised more frequently than once during any two-year period. The examiner making the examination of any national bank shall have power to make a thorough examination of all the affairs of the bank and in doing so he shall have power to administer oaths and to examine any of the officers and agents thereof under oath and shall make a full and detailed report of the condition of said bank to the Comptroller of the Currency: . . ."

The Insurance Companies allege that the United States conducted these bank examinations negligently and thus caused the losses at FNB by failing to discover the wrongdoing by the FNB employees. They also allege that the United States knew various facts relative to FNB and nevertheless negligently failed to act upon those facts as it might have done by following a variety of available statutory procedures. The Insurance Companies then argue that such negligence gives rise to liability because the statutes providing for United States authority to examine and regulate banks impose a duty on the United States in favor of the banks so examined and regulated.

The main case discussed by the parties on this issue is *Harmsen v. Smith,* Civil Nos. 73–460–E, 74–345–E (S.D.Cal. July 28, 1975), *appeal pending.*

*Harmsen* arose out of the failure of the United States National Bank in California. Former shareholders sued a former director who in turn impleaded the Comptroller of the Currency. The director alleged that the Comptroller had negligently examined the bank in violation of a duty to the directors imposed by 12 U.S.C. § 481.

The Court in *Harmsen* stated (at p. 6): "the purpose of the examination is to judge the operations of the bank, not to detect all frauds and deficiencies for the protection of creditors and shareholders. The examination is designed to supply the Comptroller and other government administrators with the information necessary to perform their regulatory functions. This court concludes that the examination is not intended to create an actionable duty to the examined banks." *See also, FDIC v. Friedman, Heffner, Kahan & Dysart,* Civ. No. 76–0510–N (S.D.Cal. April 13, 1977).

In a more recent case, *Kaufman v. Evans,* Civ. No. 127–71 (D.N.J. July 21, 1977) (Whipple, C. J.), this same argument to the effect that the United States had a statutory duty to banks and bank directors by virtue of the duty to examine banks was considered and rejected. The Court noted at page five that "the Comptroller's examination report is not designed to create an actionable duty to the examined bank and its directors."

The *Harmsen* and *Kaufman* Courts both relied on the decision in *Social Security Administration Baltimore Federal Credit Union v. United States,* 138 F.Supp. 639 (D.Md.1956), which held that examinations of credit unions under 12 U.S.C. § 1756 did not extend an actionable duty to the officers of the Credit Union.

The reasoning of all these Courts is that the statutes requiring examination of financial institutions were primarily designed to help the Government in its regulation of those institutions.

Notwithstanding possible incidental benefit to the examined banks, to hold that the examinations were therefore designed to protect the shareholders, officers or directors from any fraud at these banks would make the United States an insurer of all banking activities. This would be an enormous liability that should not be read into the statute absent a clearer expression of congressional intent.

To the extent that the Insurance Companies further attempt to predicate a statutory duty to the bank on the entire scheme of governmental regulation of banks, this Court holds to the same effect: i. e., such regulatory scheme does not create a duty to the banks regulated and any purported failure on the part of the United States to properly regulate the FNB cannot serve as the basis of the instant third-party complaints. The regulatory scheme is intended primarily for the benefit of the public and the common weal, not for the benefit of banks and bank directors.

Therefore, we hold that the statutes discussed here do not impose a duty running from the United States to the FNB.

### Assumption of a Duty[2]

[4] Some of the Insurance Companies argue[3] that even if there is no statutory duty, the Government's involvement in the operation of FNB was so extensive that it was reasonable for the bank and its directors, officers and shareholders to rely on the United States to protect against fraud, and thus the United States thereby assumed a duty to these parties. The Insur-

ance Companies allege that the United States exercised substantial control over the day-to-day operations of FNB and so should be liable if losses due to negligence or fraud occurred.

The leading case in the area of the assumption of a duty by the United States is *Indian Towing Co. v. United States,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955).

In that case the Coast Guard negligently operated a lighthouse causing a barge and tug to be damaged. The Court stated (at p. 69, 76 S.Ct. at p. 126):

"The Coast Guard need not undertake the lighthouse service. But once it exercised its discretion to operate a light on Chandeleur Island and engendered reliance on the guidance afforded by the light, it was obligated to use due care to make certain that the light was kept in good working order; and, if the light did become extinguished, then the Coast Guard was further obligated to use due care to discover this fact and to repair the light or give warning that it was not functioning. If the Coast Guard failed in its duty and damage was thereby caused to petitioners, the United States is liable under the Tort Claims Act."

*See also Rayonier, Inc. v. United States,* 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957); *Fair v. United States,* 234 F.2d 288, 294 (5th Cir. 1956); *United States v. Lawter,* 219 F.2d 559 (5th Cir. 1955); *Somerset Seafood Co. v. United States,* 193 F.2d 631 (4th Cir. 1951).

Furthermore, the Second Circuit in *Ingham v. Eastern Air Lines, Inc.,* 373 F.2d 227, 236 (2d Cir.), *cert. denied,* 389 U.S. 931, 88 S.Ct. 295, 19 L.Ed.2d 292 (1967), stated as follows:

---

**2.** We note that United States liability pursuant to 28 U.S.C. § 1346(b) has the additional restriction that the United States can only be liable "if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

The parties agree that New York law applies, and New York recognizes an assumption of duty theory of liability. *Glanzer v. Shepard,*

233 N.Y. 236, 135 N.E. 275 (1922); *Zibbon v. Town of Cheetowaga,* 51 A.D.2d 448, 382 N.Y. S.2d 152 (4th Dept.), *appeal dismissed,* 39 N.Y.2d 1056, 387 N.Y.S.2d 428, 355 N.E.2d 388 (1976); *Paul v. Staten Island Edison Corporation,* 2 A.D.2d 311, 155 N.Y.S.2d 427, 442 (2d Dept. 1956). Therefore § 1346(b) does not bar this claim.

**3.** See note 1 and text accompanying, *supra.*

"It is now well established that when the government undertakes to perform services, which *in the absence of specific legislation* would not be required, it will, nevertheless, be liable if these activities are performed negligently. Thus, for example, though the government may be under no obligation in the absence of statute to render medical care to discharged veterans, when it decides to provide such services and does so negligently, it has been held liable under the Tort Claims Act." (Emphasis added.)

In opposition to this, the Government cites the *Harmsen* case, *supra,* which discusses *Indian Towing* and comes to the opposite conclusion. At page seven the Court stated:

"The decision in this case is not contrary to that in *Indian Towing.* The crucial difference is the purpose for which such task is performed. It is clear that the reason for operating the lighthouse was to provide warning to ships. The examinations conducted under § 481, as indicated above, are designed to assist the government in the regulation of national banks, not to provide warnings of violations to such banks."

■■■ This Court also holds that this same conclusion applies to the proposition put forth by the Insurance Companies that, by all of its regulatory activities, the United States has assumed a duty to the banks which it regulates. This conclusion is supported by the decisions in *Harmsen, supra,* and *SSA Credit Union, supra,* which rejected the imposition of a duty to the bank or credit union based on the Government's purported negligence in handling discovered violations, *see Harmsen, supra,* at pp. 5, 10, *SSA Credit Union, supra,* at p. 642. By regulating the banks, the United States does not thereby assume a duty to the banks such that negligent regulation gives rise to tort liability. Proof of mere negligent regulation will not support the third-party claims in the instant case, as the United States assumes no duty thereby.[4]

4. This conclusion is reinforced by New York case law, which, as noted above, is relevant according to the terms of the FTCA in determining possible Government liability, *see* note 2, *supra.* In *Steitz v. City of Beacon,* 295 N.Y. 51, 64 N.E.2d 704 (1945), the Court of Appeals rejected municipal liability based on negligent maintenance of a water system and resultant fire damages, noting that (at p. 56, 64 N.E.2d at p. 706):

Such enactments do not import intention to protect the interest of any individual except as they secure to all members of the community the enjoyment of rights and privileges to which they are entitled only as members of the public. Neglect in the performance of such requirements creates no civil liability to individuals.

Moreover, while the Court holds that no duty is owed FNB or its directors by the United States by virtue of its undertaking regulation of the banking system, even assuming such a duty does exist does not aid the Insurance Companies in the instant case. To the extent the third-party complaints allege mere regulatory negligence by the United States and its agencies, the Government is protected from tort liability for such regulatory negligence by section 2680(a) of the FTCA which protects the Government from liability "based upon the exercise or performance or the failure to exercise or perform a discretionary function on the part of a federal agency or an employee of the Government." 28 U.S.C. § 2680(a). (To the extent the third-party complaints allege more than mere regulatory negligence, the application of this "discretionary function" exception of the FTCA is subject to different considerations, see text at p. 735, *infra.*) The Insurance Companies argue that the Government's malfeasance in performing such nondiscretionary functions as bank examinations take this case out of the above "discretionary function" exception. This Court is unpersuaded by this argument however in light of the fact that the implied gravamen of the third-party complaints is a failure to *detect* and *correct* unsound banking practices at FNB. The mere failure to detect such unsound banking practices does not in itself harm FNB; it is the Government's supposed negligence in not acting upon that which it should have detected which is the essential gravamen of these third-party complaints. However, how the Government acts upon the bank examinations and the steps the Government takes in regulating banks are fundamentally discretionary functions which, under the FTCA, cannot provide the basis of Government tort liability. Thus even if the Government did assume a duty to FNB arising from its regulation of the banking system, it is absolved from tort liability for mere negligent regulation by the "discretionary function" exception of the FTCA. *See Harmsen, supra,* at p. 11.

However, in *Harmsen* and the other cases discussed above, there was no allegation that the Government went beyond its normal regulatory role. As our case does involve such allegations, these cases are thus not dispositive of all questions raised herein.

We further find support for the proposition that the United States can assume a duty in this context in the *SSA Credit Union* case, *supra*. In that case the question was whether a statute which required examinations of credit unions imposed any actionable duty on the Government. The Court stated (138 F.Supp. at 648):

"Plaintiffs contend that even if the statute does not impose a duty on the Bureau to make such audits for the benefit of the individual credit unions, the Bureau assumed that duty. If it be true that the government induced the officials of the plaintiff credit union to rely on the examinations made by the Bureau examiners, and to disregard the duties placed on the officials of the credit union by the statute, by-laws, etc., the government would be obligated to exercise reasonable care under the circumstances in the performance of what the plaintiff credit union had been led to believe the government had undertaken to do. *Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48."

The Court then went on to find that (at p. 660):

"I have already found that the statute imposed no such duty on the government, and that the government formally assumed no such duty. Now, after careful consideration of the statute, the Handbook, the Supervisory Committee Manual, the charter, the by-laws, the examiner's guide, the language of the certificates and the other contents of the reports, and the correspondence and conversations between representatives of the Bureau and officials of the plaintiff credit union, I find that the Bureau examinations and the reports of examination furnished by the Bureau did not amount to a trap which was reasonably calculated to lure

the officers, directors and supervisory committee into a complete disregard of their duties."

This case, suggests, therefore, that if the activities of the Government were so extensive that the directors or officers reasonably relied on the Government to prevent fraud, then the United States could be held liable on the theory of assumption of a duty.

Finally we must discuss the Second's Circuit's opinion in *Huntington Towers v. Franklin National Bank*, 559 F.2d 863 (2d Cir. 1977). This case, of course, is particularly relevant as the suit arose out of the collapse of FNB, and thus the factual allegations being discussed overlap to some extent with those made here by the Insurance Companies.

In the *Huntington Towers* case, the Court upheld the dismissal of claims against the Comptroller stating as follows (at p. 868):

"Both the fixing of the date of declaration of insolvency by the Comptroller and the granting of rescue funds to FNB by the FRB were exercises of judgment by the public officials concerned and were well within their competence and authority. Absent clear evidence of grossly arbitrary or capricious action on the part of either or both of them—a factor which does not appear to be present here—it is not for the courts to say whether or not the actions taken were justified in the public interest, particularly where it vitally concerned the operation and stability of the nation's banking system."

The Court also upheld the dismissal of claims against the Federal Reserve Bank of New York ("FRB") apparently on the ground that as long as the FRB acted within its statutory authorization, the decisions of the FRB are immune from judicial scrutiny.

The Court was apparently concerned about substituting its judgment for that of the regulatory agencies in the delicate and complex problems arising from a failing bank. We agree with the Second Circuit's concern, but we think that if the Government goes beyond the normal regulatory activities and substitutes its decisions for

those of the officers and directors, and if the bank and bank directors reasonably rely on these actions of the Government, the Government may assume a duty to those parties to prevent fraud.

Furthermore, the *Huntington Towers* opinion provides a possible source of liability here. The Court at page 868 stated that the courts would not question the exercise of judgment by public officials *"[a]bsent clear evidence of grossly arbitrary or capricious action . . . ."* (Emphasis added.) The Insurance Companies strongly urge that the conduct here was grossly arbitrary and capricious, and so the Government may have assumed a duty, if it in fact acted in that manner.

In other words, the allegations here makes this an extraordinary case, and we cannot say, prior to the completion of discovery, that there is no conceivable set of facts that would render the United States liable. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *McKinney v. DeBord,* 507 F.2d 501, 503 (9th Cir. 1974).

Therefore, we must deny the motion to dismiss on this ground that the United States had no duty to the FNB. In so doing, of course, we express or intimate no opinion as to whether the Insurance Companies will be able to produce evidence in support of this part of their claims.[5]

### Question of Possible Exceptions Under the FTCA

The Government further argues that various exceptions to the FTCA prevent the United States from being sued in this case. While the FTCA does generally waive sovereign immunity, 28 U.S.C. § 2680 provides certain exceptions to that waiver. It states in relevant part as follows:

"The provisions of this chapter and section 1346(b) of this title shall not apply to—

(a) Any claim based upon an act or omission of an employee of the Government exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

\* \* \* \* \* \*

(h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: . . . [as amended 1974].

(i) Any claim for damages caused by the fiscal operations of the Treasury or by the regulation of the monetary system."

■ Dealing with these exceptions in reverse order, we would agree with the Court in *Harmsen, supra,* that the "monetary system" exception contained in § 2680(i) does not apply to bank examinations or regulation of banks in general.

■ The Government also seeks to fit this case under § 2680(h) through the word "misrepresentation" relying principally on the case of *United States v. Neustadt,* 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961). That case held that this exception includes negligent as well as wilful misrepresentation.

It is the Government's position that the allegations against the Government are that the FDIC and Comptroller misrepresented the true condition of FNB to the directors of FNB by failing to expose the fraud or prevent it. While the United States does not argue what happened was *wilful,* the United States points out that

---

5. The Court has recently received a letter dated January 10, 1978 from counsel for two of the Insurance Companies indicating perhaps a miscomprehension of the degree of proof that will be required to sustain the Insurance Compa-

nies' third-party complaints. Mere knowledge of the internal developments at FNB without accompanying proof of negligent management or operation of FNB will be in all probability not be sufficient.

*Neustadt* clearly makes negligent misrepresentation part of this exception. Thus if the Government agents negligently failed to discover the condition of FNB and negligently failed to reveal this information, then it is argued that this exception applies.

There is little support for this position in the cases. For example, in *United Air Lines, Inc. v. Wiener*, 335 F.2d 379 (9th Cir.), *cert. dismissed*, 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 549 (1964), the Court rejected the Government's argument stating (335 F.2d at 398):

> "The government's reliance upon 28 U.S.C. § 2680(h) relating to exemption from the Tort Claims Act of causes of action predicated upon misrepresentation is misplaced. This section applies to claims arising out of misrepresentation. *United States v. Neustadt*, 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1960). Here, the gravamen of the action is not misrepresentation but the negligent performance of operational tasks, although such negligence consisted partly of a failure of a duty to warn."

The *Harmsen* case reached the same conclusion, relying on *Wiener*. See *Ingham v. Eastern Airlines, supra; Hungerford v. United States*, 307 F.2d 99 (9th Cir. 1962).

However, Judge Judd in *Huntington Towers, supra,* dismissed the claim against FDIC as a corporation under § 2680(h). The FDIC withdrew its appeal, and so this question was not discussed in the Second Circuit's opinion. In our case, however, we have held that the only viable claim is based on the FDIC's, the Comptroller's and the FRB's purported control of FNB. In other words, the gravamen of the complaint is the negligent performance of the operational task of running the bank, which is not covered by § 2680(h). *Ingham v. Eastern Air Lines, supra,* at 239. If this Court had held that a duty ran to FNB by reason of the negligent regulatory activities of the FDIC, the Comptroller and FRB, then we would have to deal with this question, but in view of our holding above, we do not.

Finally, the Government argues that the actions here were part of a "discretionary function" and thus exempted from the FTCA by § 2680(a), relying on *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). In that case the Supreme Court explained the limits of this exception as follows (at p. 42, 73 S.Ct. at p. 971):

> "In short, the alleged 'negligence' does not subject the Government to liability. The decisions held culpable were all responsibly made at a planning rather than operational level and involved considerations more or less important to the practicability of the Government's fertilizer program."

This distinction was also made in the *Indian Towing* case, *supra,* where the Supreme Court held that the decision by the Coast Guard to build a lighthouse, was not open to review, but once the Coast Guard builds a lighthouse it cannot operate it negligently.

By analogy, while the chartering of a national bank by the United States is a discretionary decision exempt from scrutiny, as is the fixing of the date of declaration of insolvency, however, once having taken control of a bank, as it is alleged to have done here, it could not operate it in a negligent manner without being subject to liability. See *Griffin v. United States*, 500 F.2d 1059, 1069 (3d Cir. 1974); *Hendry v. United States*, 418 F.2d 774 (2d Cir. 1969); *United Air Lines v. Wiener, supra,* at p. 396; *Harmsen v. Smith, supra,* at p. 10.

Therefore, we hold that this exception does not bar the Insurance Companies' claims.

Finally, the Government argues that the claims under the FTCA are not timely under 28 U.S.C. § 2401(b) which requires that claims be presented within two years after such claim accrues. The Insurance Companies argue that they filed their claims within two years of the Congressional hearings in 1976 which put them on notice of the Government's wrongdoing. See *Jordan v. United States*, 503 F.2d 620, 623 (6th Cir. 1974); *Toal v. United States*, 438 F.2d 222, 225 (2d Cir. 1971); *Hammond v.*

*United States*, 388 F.Supp. 928, 931 (E.D.N. Y.1975).

In accordance with our analysis in the *Hammond* decision, we hold that there is an issue of fact as to whether the Insurance Companies "in the exercise of reasonable diligence" should have discovered the wrongdoing prior to 1976, and so we deny the motion to dismiss on this ground.

The United States motion to dismiss, therefore, should be, and the same hereby is, denied, without prejudice as indicated.

## II—*The FDIC Motion to Dismiss*

In *FDIC v. National Surety Corporation, et al., supra*, the FDIC moves to dismiss seven counterclaims for recoupment asserted by the defendants National Surety Corporation and Fireman's Fund Insurance Companies, sued herein as Fireman's Fund Insurance Company (hereinafter collectively referred to as "Fireman's"), two setoffs and counterclaims asserted by the defendant The Aetna Casualty and Surety Company ("Aetna") and one setoff and counterclaim asserted by the defendant Insurance Company of North America ("INA") in their answers.

Fireman's first counterclaim for recoupment is based upon the claim that plaintiffs bring this action on behalf of FRB and upon a claimed breach of an alleged statutory duty imposed on the FRB "to act with due care whenever issuing orders and directives or making recommendations to the management of a national bank"; its second counterclaim for recoupment is based upon the claim that the Comptroller of the Currency and the plaintiff FDIC, in its corporate capacity, are agents acting by and on behalf of the United States and upon a claimed breach, through negligence on the part of the Comptroller of an alleged statutory duty imposed on the Comptroller "to act with due care whenever conducting a national banking examination"; its third counterclaim for recoupment asserts that the FDIC, FRB and the Comptroller are all agencies acting by and on behalf of the United States and is based upon a claimed breach of statutory duty by the negligence of all three of them; its fourth counterclaim for recoupment again claims that the Comptroller, the FDIC and the FRB were agencies of the United States and is based upon a claimed breach of a statutory duty and a common law duty, which by their acts and conduct the agencies assumed and upon which Fireman's was entitled to and did rely, "to act with reasonable care whenever exercising their supervisory and regulatory function"; its fifth counterclaim for recoupment is based upon alleged false statements made by the FDIC in a "proof of loss" submitted to Fireman's on March 19, 1976 on which Fireman's claims to have relied to its detriment; its sixth counterclaim for recoupment is again based upon a claimed breach of statutory and common law duty by the FDIC "alone and in conjunction with other agencies of the USA" to "regulate, supervise and control FNB as a national bank", and its seventh counterclaim for recoupment is yet again based upon a claimed breach of the same statutory and common law duty by the FDIC and other agencies of the United States specifically arising from the Government's role vis-a-vis FNB from May, 1974 to October 8, 1974.

Aetna's first setoff and counterclaim is based upon a claimed breach of a duty allegedly owed to FNB and to Aetna to "supervise, regulate and control FNB, a national bank with reasonable care" and its second setoff and counterclaim is predicated upon a claimed breach of the same duty specifically arising from the Government role vis-a-vis FNB from May, 1974 to October 8, 1974.

Defendant INA's only setoff and counterclaim is predicated upon a claimed breach of a statutory duty by the FDIC "alone and in conjunction with United States acting through various of its agencies and instrumentalities" to "regulate and control national banking institutions such as FNB * * * with reasonable care and in a manner consistent with and in furtherance of the statutory and regulatory purposes."

In testing the sufficiency of the above counterclaims, the threshold question is one of whether in fact a duty is owed FNB, and, derivatively, the Insurance Companies, by FDIC, upon which these counterclaims can be based. This question is functionally equivalent to that analyzed and answered above as to a purported duty on the part of the United States. Thus, the conclusion reached above applies with equal force here.

Thus, to the extent these counterclaims rest upon a claimed breach of a statutory duty owed FNB by FDIC, they fall within the scope of our decision above in which we held that the statutes which involve the powers of the FDIC, the Comptroller and the Federal Reserve Bank to examine banks and issue orders in regard to those banks did not impose a duty running from the United States or any of its agencies to the FNB and hence, of course, no duty running to Fireman's, Aetna or INA. Moreover, to the extent these counterclaims rest upon a claimed breach of a common law assumed duty, none of these counterclaims allege facts sufficient to support a claim that FDIC went beyond the mere regulatory functions and exercised substantial control over the operations of FNB such as to assume a duty to FNB. For these reasons, FDIC's motion to dismiss all the above counterclaims must be granted as to all such counterclaims, with the exception of Fireman's fifth counterclaim for recoupment.

FDIC also argues that all the above counterclaims plus the Fireman's fifth recoupment counterclaim are barred by sovereign immunity. The cases seem clear, however, that "a defendant may, without statutory authority, recoup on a counterclaim an amount equal to the principal claim", *United States v. United States Fidelity & Guaranty Co.*, 309 U.S. 506, 511, 60 S.Ct. 653, 656, 84 L.Ed. 894 (1940), so long as the defendant asserts "matters in recoupment—arising out of the same transaction or occurrence which is the subject matter of the government's suit and to the extent of defeating the government's claim but not to

the extent of a judgment against the government which is affirmative in the sense of involving relief different in kind or nature to that sought by the government or in the sense of exceeding the amount of the government's claims; but the sovereign does not waive immunity as to claims which do not meet the 'same transaction or occurrence tests' nor to claims of a different form or nature than that sought by it as plaintiff." *Frederick v. United States,* 386 F.2d 481, 488 (5th Cir. 1967); *see, also, Bull v. United States,* 295 U.S. 247, 262, 55 S.Ct. 695, 79 L.Ed. 1421 (1935); *Federal Savings & Loan Insurance Corp. v. Quinn,* 419 F.2d 1014, 1017 (7th Cir. 1969); *United States v. Taylor,* 342 F.Supp. 715, 716 (D.Kan.1972).

The FDIC correctly points out, however, that the nature of the claims asserted by the defendants Fireman's, Aetna and INA are substantially different than those asserted by the FDIC against them. It is indisputable that the FDIC's claims against Fireman's, Aetna and INA are for breach of contract between the Insurance Companies and FNB (the government not being a party) and arise out of dishonesty *of employees of FNB* which are allegedly covered by defendants' Fidelity insurance policies. The recoupment and setoff counterclaims on the other hand sound in tort alleging breaches of statutory and common law duties by reason of alleged failure *of the Government* to properly regulate FNB. The evidence in support of and the facts and the law with respect to the latter claims are substantially different from the evidence and the facts and the law with respect to the former claims and there is no real logical relationship between the two.

Thus, FDIC has not waived its sovereign immunity as to the various counterclaims asserted by the Insurance Companies.

As indicated above, Fireman's fifth counterclaim raises separate and distinct considerations. To begin with, it is based on FDIC's alleged tortious misrepresentation in its "proof of claim." While Section 2680(h) of the FTCA arguably protects the Government from liability arising out of "misrepresentation", Fireman's contention

that the Government has waived its sovereign immunity with respect to this claim may have some merit in that this matter in recoupment may arise out of the same transaction or occurrence which is the subject matter of the Government's suit. For this reason, this claim in recoupment cannot be dismissed at this time.

What we have said above with respect to the defendants' recoupment and setoff counterclaims would appear to be equally applicable to many of the defendants (including the defendant Ernst & Ernst and Continental Bank International) affirmative defenses attacked by the FDIC on this motion. However, allowing these affirmative defenses to stand does not appreciably prejudice the FDIC and it cannot be conclusively determined at this point that they are without merit. Therefore, this portion of the FDIC's motion is more appropriately made at the conclusion of discovery or at the conclusion of the trial of the case and we will therefore deny the same at this juncture without prejudice to a renewal thereof at either or both of such times.

### III—*The Ernst & Ernst Motion to Amend*

As noted above, Ernst & Ernst has made a motion seeking leave to amend its answers, answers to cross-claims and third-party complaints and to bring in third-party defendants in *Gold v. Ernst & Ernst, supra, FDIC v. Ernst & Ernst, supra, FDIC v. National Surety Corporation, supra,* and *Corbin v. National Surety Corporation, supra,* all of these actions having been consolidated for pretrial purposes by the Court on April 22, 1977.

In the *Gold* action, Ernst & Ernst seeks to add the following affirmative defenses: (i) that the amended Gold and Pergament complaints fail to state a claim; (ii) that the claims asserted in the amended complaint are barred by the applicable statute of limitations; (iii) that if the United States of America is not liable to the class certified in *Gold* and to intervenor-plaintiff Pergament because there can be no recovery of damage from the United States, then Ernst & Ernst's liability (if any) would be propor-

tionately reduced; and (iv) that because the class plaintiff representative has failed to name the United States and its regulatory agencies as defendants, Ernst & Ernst's liability (if any) should be proportionately reduced.

The first two amendments are allowed. The last two amendments, though raising issues of government liability akin to those discussed above, are also allowed at this time, without prejudice to a motion to strike at some point following the conclusion of all discovery, it being unnecessary, as noted above, for this Court to decide those issues at this juncture.

Ernst & Ernst also seeks to amend its answer in the *Gold* case by adding a counterclaim which was recently set forth in Ernst & Ernst's answer to the amended Pergament complaint and intervention. In this counterclaim Ernst & Ernst seeks to recover from the plaintiff class any illegal payment of dividends for which it may be held liable by the FDIC.

Alleging that such a counterclaim has "no basis in law and  *  *  *  may mislead many class members who, fearing extensive liability, may opt out of the litigation to their own prejudice", the attorneys for the class oppose this part of Ernst & Ernst's motion.

As to the claim that the proposed counterclaim has "no basis in law", the attorneys for the class argue that, given the absence of class culpability or some express or implied agreement between Ernst & Ernst and the shareholder class, no liability for contribution or indemnification can be legally established. The Court is not persuaded by this argument. Indeed, Section 1401 of the New York Civil Practice Law and Rules provides:

" .  .  . two or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death, may claim contribution among them whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought."

Case law construing the section suggests that "liability" need not be tort liability

requiring culpability. *Taft v. Shaffer Trucking, Inc.,* 52 A.D.2d 255, 383 N.Y.S.2d 744 (4th Dept. 1976). Ernst & Ernst, in its memorandum of law, further cites cases in support of possible shareholder liability for illegally paid dividends. Thus, while the Court does not rule at this time on the ultimate resolution of the proposed counterclaim, it cannot at this time be dismissed as wholly without legal basis.

Attorneys for the plaintiff class also point out that cases have held counterclaims should not be permitted against class members who are not plaintiffs and are not participating in the litigation, *Donson Stores, Inc. v. American Bakeries Co.,* 58 F.R.D. 485 (S.D.N.Y.1973); *Dennis v. Sax & Co.,* 1975–2 CCH Trade Cases ¶ 60,396 (S.D. N.Y.1975), but concede that the courts have allowed defendants to file counterclaims against specified class members where the counterclaim was filed after the class member filed his claim, *Weit v. Continental Illinois Bank & Trust Co. of Chicago,* 60 F.R.D. 5, 8 (N.D.Ill.1973), and where the counterclaim was interposed only as a defensive setoff with respect to a limited number of individually identified class members under certain conditions, *Herrmann v. Atlantic Richfield Co.,* 72 F.R.D. 182, 185–186 (W.D. Pa.1976).

Thus, while it may be that the proposed counterclaim will only stand against a class member who files a claim, in this Court's view it is far better for a class member to know of any claims with which he may be confronted before he files a claim than to be apprised thereof thereafter.

Also in this Court's view, it is too early at this stage to determine: (i) whether there was an illegal dividend payment; (ii) whether Ernst & Ernst had any liability for the alleged illegal dividend payment, and (iii) whether the facts will sustain a counterclaim by way of defensive setoff or otherwise. Accordingly, defendants application to serve the proposed counterclaim must be granted, again without prejudice to a later motion to strike.

Finally, in *FDIC v. Ernst & Ernst, supra,* Ernst & Ernst seeks leave to add a counterclaim for indemnification and/or contribution based on FDIC's purported liability for the losses with which Ernst & Ernst is also charged. Also, Ernst & Ernst seeks leave to serve third-party complaints against the United States in *Gold v. Ernst & Ernst, supra,* and *FDIC v. National Surety Corporation, supra,* and *Corbin v. National Surety Corporation, supra,* stating similar claims for indemnification and/or contribution. Ernst & Ernst seeks leave to serve third-party complaints in *FDIC v. Ernst & Ernst, supra,* and *Gold v. Ernst & Ernst, supra,* against certain directors, officers and/or other employees of FNB, once again stating similar claims for indemnification and/or contribution. To complete the complex maze of procedural motions, certain individual defendants in separate actions have joined in Ernst & Ernst's motion here and also seek leave to add claims against the United States.

The Court grants leave in all such instances with the qualification that in all such claims against the United States and its agencies, all moving parties will be required to prove, as indicated above, that the Government had taken such control of the management of the FNB as to have assumed a duty which would render the Government liable. In the light of this Court's opinion on this question, all moving parties may, prior to the service of any amended pleading herein, wish to redraft the language of their particular claims.

What has been said with respect to the foregoing motion by Ernst & Ernst and others should be sufficient to cover the related motions made by all defendants. If in any respect the foregoing does not cover the questions there raised, the party should call the particular issues to the Court's attention by supplemental motion and a supplemental opinion will, if necessary, be issued.

Settle appropriate orders on notice.